Inst #: 201003290000124
Fees: $41.00
N/C Fee: $0.00
03/29/2010 08:01:40 AM
Receipt #: 288153
Requestor:
**LSI - NORTH**
Recorded By: ARO   Pgs: 28
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

Assessor's Parcel Number:
█████████████
After Recording Return To:
BANK OF AMERICA, N.A.

ReconTrust Co./TX2-979-01-07
P.O. Box 619003
Dallas, TX 75261-9003

Prepared By:
SALLY OH
Recording Requested By:
D. User

BANK OF AMERICA, N.A.

1455 FRAZEE ROAD, SUITE 102
SAN DIEGO
CA 92108

████████████

----------------[Space Above This Line For Recording Data]----------------

[Escrow/Closing #]          [Doc ID #]

Lender affirms that this instrument does not contain Personal Information as that term is defined in Nevada Revised Statues §603A.040.

# DEED OF TRUST

### Recording Requested By:
### LSI

**NEVADA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     **Form 3029  1/01**

Deed of Trust-NV
1006--NV (05/08)(d/i)                    Page 1 of 15

EXHIBIT 1

DOC ID #: ▮▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    DECEMBER 21, 2009    ,
together with all Riders to this document.

**(B) "Borrower"** is

JAMES W PENGILLY,AS TRUSTEE OF THE JAMES W. PENGILLY TRUST,
DATED SEPTEMBER 22, 2003

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
BANK OF AMERICA, N.A.

Lender is a
NATIONAL ASSOCIATION

organized and existing under the laws of THE UNITED STATES
Lender's address is
101 South Tryon Street
Charlotte, NC 28255
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is
RECON TRUST COMPANY

MSN TO-02, 225 WEST HILLCREST DRIVE
THOUSAND OAKS, CA 91360

**(E) "Note"** means the promissory note signed by Borrower and dated    DECEMBER 21, 2009    .
The Note states that Borrower owes Lender
FOUR HUNDRED FOURTEEN THOUSAND FOUR HUNDRED and 00/100

Dollars (U.S. $ 414,400.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    JANUARY 01, 2040    .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

**NEVADA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3029 1/01**
Deed of Trust-NV
1006--NV (05/08)                    Page 2 of 15

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 2 of 28
Order: gj, Comment:

EXHIBIT 1

```
                                                    DOC ID #: ████████████
```

**(H)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☒ Condominium Rider                ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider   ☒ 1-4 Family Rider
☐ VA Rider                     ☐ Biweekly Payment Rider           ☐ Other(s) [specify]

**(I)  "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)  "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)  "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)  "Escrow Items"** means those items that are described in Section 3.

**(M)  "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)  "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)  "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)  "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)  "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3029  1/01**

Deed of Trust-NV
1006--NV (05/08)                    Page 3 of 15

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 3 of 28
Order: gj, Comment:

EXHIBIT 1

```
                                          DOC ID #: ██████████
            COUNTY                    of
        [Type of Recording Jurisdiction]
            CLARK                       :
        [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
```

which currently has the address of
1141 ALLERTON PARK DRIVE #411, LAS VEGAS                    ,
[Street/City]

Nevada    89109        ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any

**NEVADA**--Single Family--**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT        **Form 3029 1/01**

Deed of Trust-NV
1006--NV (05/08)            Page 4 of 15

EXHIBIT 1

DOC ID #: ████████

prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the

**NEVADA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3029  1/01

Deed of Trust-NV
1006--NV (05/08)                              Page 5 of 15

EXHIBIT 1

DOC ID #: [redacted]

amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3029  1/01

Deed of Trust-NV
1006--NV (05/08)                              Page 6 of 15


EXHIBIT 1

DOC ID #: ██████████████

hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3029  1/01

Deed of Trust-NV
1006--NV (05/08)                        Page 7 of 15



EXHIBIT 1

DOC ID #: ▓▓▓▓▓▓▓▓▓

as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.    Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.    Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3029  1/01

Deed of Trust-NV
1006--NV (05/08)                          Page 8 of 15

**EXHIBIT 1**

DOC ID #:

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     **Form 3029  1/01**

Deed of Trust-NV.
1006--NV (05/08)                    Page 9 of 15

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 9 of 28
Order: gj, Comment:

EXHIBIT 1

DOC ID #: █████████

single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3029 1/01**

Deed of Trust-NV
1006--NV (05/08)                          Page 10 of 15

*Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 10 of 28*
*Order: gj  Comment:*



EXHIBIT 1

DOC ID #: ████████████████

this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3029  1/01**

Deed of Trust-NV
1006--NV (05/08)                              Page 11 of 15

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 11 of 28
Order: gj, Comment:

**EXHIBIT 1**

DOC ID #: ▓▓▓▓▓▓▓▓

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time

**NEVADA**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3029 1/01**

Deed of Trust-NV
1006--NV (05/08)                              Page 12 of 15

EXHIBIT 1

DOC ID #: ████████

period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach  of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall**

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                     **Form 3029 1/01**

Deed of Trust-NV
1006--NV (05/08)                                    Page 13 of 15

EXHIBIT 1

DOC ID #: ████████████

sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $    300.00        .

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
                                                                    -Borrower
JAMES W. PENGILLY, INDIVIDUALLY AND AS TRUSTEE OF
THE JAMES W. PENGILLY TRUST UNDER TRUST INSTRUMENT
DATED SEPTEMBER 22, 2003, FOR THE BENEFIT OF JAMES W. PENGILLY

_____ (Seal)
                                                                    -Borrower

_____ (Seal)
                                                                    -Borrower

_____ (Seal)
                                                                    -Borrower

NEVADA--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3029  1/01
Deed of Trust-NV
1006--NV (05/08)                              Page 14 of 15

EXHIBIT 1

DOC ID #: ████████

**STATE OF NEVADA**
**COUNTY OF** Clark

This instrument was acknowledged before me on December 23, 2009 _____ by

James W. Pengilly

_Rhoda Farm_

Mail Tax Statements To:
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065



RHONDA FARMER
Notary Public State of Nevada
No. 94-1429-1
My appt. exp. July 8, 2010

**NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3029  1/01

Deed of Trust-NV
1006--NV (05/08)                    Page 15 of 15

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 15 of 28
Order: gj, Comment:

EXHIBIT 1

# 1-4 FAMILY RIDER
## (ASSIGNMENT OF RENTS)

[Escrow/Closing #]                    [Doc ID #]

THIS 1-4 FAMILY RIDER is made this TWENTY-FIRST     day of DECEMBER, 2009   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
1141 ALLERTON PARK DRIVE #411, LAS VEGAS, NV 89109

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT**

**Form 3170  1/01**

1-4 Family Rider
1057R-XX (06/09)(d/i)                    Page 1 of 4





EXHIBIT 1

DOC ID #: ██████████

**B.   USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.   SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.   RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E.   "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F.   BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G.   ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.   ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT**                                                        **Form 3170  1/01**

1-4 Family Rider
1057R-XX (06/09)                          Page 2 of 4

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 17 of 28
Order: gj, Comment:

EXHIBIT 1

```
DOC ID #: ███████████
```

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT**

**Form 3170  1/01**

1-4 Family Rider
1057R-XX (06/09)                    Page 3 of 4

EXHIBIT 1

DOC ID #: ▮▮▮▮▮▮▮▮▮

**I.    CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
JAMES W. PENGILLY, INDIVIDUALLY AND AS TRUSTEE OF                          - Borrower
THE JAMES W. PENGILLY TRUST UNDER TRUST INSTRUMENT
DATED SEPTEMBER 22, 2003, FOR THE BENEFIT OF JAMES W. PENGILLY

_____ (Seal)
                                                                         - Borrower

_____ (Seal)
                                                                         - Borrower

_____ (Seal)
                                                                         - Borrower

**MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac**
**UNIFORM INSTRUMENT**                                       **Form 3170  1/01**

1-4 Family Rider
1057R-XX (06/09)                        Page 4 of 4

# CONDOMINIUM RIDER

[Escrow/Closing #]          [Doc ID #]

THIS CONDOMINIUM RIDER is made this TWENTY-FIRST day of DECEMBER, 2009 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1141 ALLERTON PARK DRIVE #411, LAS VEGAS, NV 89109

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

SUMMERLIN LOFTS PHASE 1

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods,

**MULTISTATE CONDOMINIUM RIDER**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                                          **Form 3140 1/01**

Condominium Rider
1008R-XX (05/08)(d/i)                          Page 1 of 3



EXHIBIT 1

DOC ID #: ▉▉▉▉▉

and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**Form 3140 1/01**

Condominium Rider
1008R-XX (05/08)                    Page 2 of 3

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 21 of 28
Order: gj, Comment:

EXHIBIT 1

DOC ID #: ████████

**F.  Remedies.**  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
JAMES W. PENGILLY, INDIVIDUALLY AND AS TRUSTEE OF                                                    - Borrower
THE JAMES W. PENGILLY TRUST UNDER TRUST INSTRUMENT
DATED SEPTEMBER 22, 2003, FOR THE BENEFIT OF JAMES W. PENGILLY

_____ (Seal)
                                                                                                     - Borrower

_____ (Seal)
                                                                                                     - Borrower

_____ (Seal)
                                                                                                     - Borrower

**MULTISTATE CONDOMINIUM RIDER**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                                         Form 3140 1/01

Condominium Rider
1008R-XX (05/08)                              Page 3 of 3

EXHIBIT 1

# INTER VIVOS REVOCABLE TRUST RIDER

████████████    [Escrow/Closing #]    ████████████    [Doc ID #]

**DEFINITIONS USED IN THIS RIDER.**

    (A)  "Revocable Trust." The
THE JAMES W PENGILLY TRUST

created under trust instrument dated   SEPTEMBER 22, 2003   , for the benefit of
JAMES W. PENGILLY

    (B)  "Revocable Trust Trustee(s)."
JAMES W. PENGILLY

trustee(s) of the Revocable Trust.
    (C)  "Revocable Trust Settlor(s)."
JAMES W. PENGILLY

settlor(s) of the Revocable Trust signing below.
    (D)  "Lender."
BANK OF AMERICA, N.A.

    (E)  "Security Instrument." The Deed of Trust, Mortgage or Security Deed and any riders thereto of the same date as this Rider given to secure the Note to Lender of the same date made by the Revocable Trust, the Revocable Trust Trustee(s) and the Revocable Trust Settlor(s) and any other natural persons signing such Note and covering the Property (as defined below).

Inter Vivos Revocable Trust Rider
1372R-XX (03/09)(d/i)

Page 1 of 4





Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 23 of 28
Order: gj, Comment:

EXHIBIT 1

DOC ID #: ▉▉▉▉▉▉▉▉

(F) "Property." The property described in the Security Instrument and located at:
    1141 ALLERTON PARK DRIVE #411, LAS VEGAS, NV 89109

[Property Address]

**THIS INTER VIVOS REVOCABLE TRUST RIDER** is made this TWENTY-FIRST    day of
DECEMBER, 2009    , and is incorporated into and shall be deemed to amend and supplement the Security
Instrument.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
the Revocable Trust Trustee(s), and the Revocable Trust Settlor(s) and the Lender further covenant and agree as
follows:

**A.    INTER VIVOS REVOCABLE TRUST.**

**1.    CERTIFICATION AND WARRANTIES OF REVOCABLE TRUST TRUSTEE(S).**

    The Revocable Trust Trustee(s) certify to Lender that the Revocable Trust is an inter vivos revocable
trust for which the Revocable Trust Trustee(s) are holding full title to the Property as trustee(s).

    The Revocable Trust Trustee(s) warrants to Lender that (i) the Revocable Trust is validly created under the
laws of the State of                      ; (ii) the trust instrument creating the Revocable Trust is in
full force and effect and there are no amendments or other modifications to the trust instrument affecting the
revocability of the Revocable Trust; (iii) the Property is located in the State of NEVADA                      ;
(iv) the Revocable Trust Trustee(s) have full power and authority as trustee(s) under the trust instrument creating
the Revocable Trust and under applicable law to execute the Security Instrument, including this Rider; (v) the
Revocable Trust Trustee(s) have executed the Security Instrument, including this Rider, on behalf of the
Revocable Trust; (vi) the Revocable Trust Settlor(s) have executed the Security Instrument, including this Rider,
acknowledging all of the terms and conditions contained therein and agreeing to be bound thereby; (vii) only the
Revocable Trust Settlor(s) and the Revocable Trust Trustee(s) may hold any power of direction over the
Revocable Trust; (viii) only the Revocable Trust Settlor(s) hold the power to direct the Trustee(s) in the
management of the Property; (ix) only the Revocable Trust Settlor(s) hold the power of revocation over the
Revocable Trust; and (x) the Revocable Trust Trustee(s) have not been notified of the existence or assertion of
any lien, encumbrance or claim against any beneficial interest in, or transfer of all or any portion of any
beneficial interest in or powers of direction over the Revocable Trust Trustee(s) or the Revocable Trust, as the
case may be, or power of revocation over the Revocable Trust.

**2.    NOTICE OF CHANGES TO REVOCABLE TRUST AND TRANSFER OF POWERS OVER
REVOCABLE TRUST TRUSTEE(S) OR REVOCABLE TRUST OR BOTH; NOTICE OF CHANGE OF
REVOCABLE TRUST TRUSTEE(S); NOTICE OF CHANGE OF OCCUPANCY OF THE PROPERTY;
NOTICE OF TRANSFER OF BENEFICIAL INTEREST IN REVOCABLE TRUST.**

Inter Vivos Revocable Trust Rider
1372R-XX (03/09)                    Page 2 of 4

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 24 of 28
Order: gj, Comment:

EXHIBIT 1

DOC ID #: ████████

The Revocable Trust Trustee(s) shall provide timely notice to Lender promptly upon notice or knowledge of any revocation or termination of the Revocable Trust, or of any change in the holders of the powers of direction over the Revocable Trust Trustee(s) or the Revocable Trust, as the case may be, or of any change in the holders of the power of revocation over the Revocable Trust, or both, or of any change in the trustee(s) of the Revocable Trust (whether such change is temporary or permanent), or of any change in the occupancy of the Property, or of any sale, transfer, assignment or other disposition (whether by operation of law or otherwise) of any beneficial interest in the Revocable Trust.

**B.    ADDITIONAL BORROWER(S).**

The term "Borrower" when used in the Security Instrument shall refer to the Revocable Trust, the Revocable Trust Trustee(s) and the Revocable Trust Settlor(s), jointly and severally. Each party signing this Rider below (whether by accepting and agreeing to the terms and covenants contained herein or by acknowledging all of the terms and covenants contained herein and agreeing to be bound thereby, or both) covenants and agrees that, whether or not such party is named as "Borrower" on the first page of the Security Instrument, each covenant and agreement and undertaking of "Borrower" in the Security Instrument shall be such party's covenant and agreement and undertaking as "Borrower" and shall be enforceable by Lender as if such party were named as "Borrower" in the Security Instrument.

**C.    CONVENTIONAL LOANS ONLY.**

The paragraph titled Transfer of the Property or a Beneficial Interest in Borrower in the Security Instrument is amended in its entirety to read as follows:

**Transfer of the Property or a Beneficial Interest in Revocable Trust.**

As used in this paragraph, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If, without Lender's prior written consent, (i) all or any part of the Property or an interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) or (ii) there is a sale, transfer, assignment or other disposition of any beneficial interest in the Revocable Trust, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior

Inter Vivos Revocable Trust Rider
1372R-XX (03/09)                    Page 3 of 4

**EXHIBIT 1**

DOC ID #: ████████████

to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, the Revocable Trust Trustee(s) accepts and agrees to the terms and covenants contained in this Inter Vivos Revocable Trust Rider.

_____ ,

JAMES W. PENGILLY

Trustee of the
THE JAMES W PENGILLY TRUST

under trust instrument dated    SEPTEMBER 22, 2003    ,
for the benefit of
JAMES W. PENGILLY

- Borrower

_____ ,

Trustee of the
THE JAMES W PENGILLY TRUST

under trust instrument dated    SEPTEMBER 22, 2003    ,
for the benefit of

- Borrower

Inter Vivos Revocable Trust Rider
1372R-XX (03/09)                    Page 4 of 4

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 26 of 28
Order: gj, Comment:

EXHIBIT 1

# INTER VIVOS REVOCABLE TRUST AS BORROWER - ACKNOWLEDGMENT

[Escrow/Closing #]          [Doc ID #]

BY SIGNING BELOW, the undersigned, Settlor(s) of the

## THE JAMES W PENGILLY TRUST

Trust under trust instrument dated    SEPTEMBER 22, 2003    , for the benefit of
JAMES W. PENGILLY

acknowledges all of the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound thereby.



_____          - Trust Settlor
JAMES W. PENGILLY, INDIVIDUALLY AND AS TRUSTEE OF
THE JAMES W. PENGILLY TRUST UNDER TRUST INSTRUMENT
DATED SEPTEMBER 22, 2003, FOR THE BENEFIT OF JAMES W. PENGILLY

_____          - Trust Settlor

_____          - Trust Settlor

_____          - Trust Settlor


**MULTISTATE INTER VIVOS REVOCABLE TRUST AS BORROWER/ACKNOWLEDGMENT**

Inter Vivos Revocable Trust as Borrower Acknowledgment
1373R-XX (03/09)(d/i)                    Page 1 of 1                    12/99

Description: Clark,NV Document - Year.Date.DocID 2010.329.124 Page: 27 of 28
Order: gj, Comment:

EXHIBIT 1

ORDER NO: ██████████

LEGAL DESCRIPTION

## Exhibit A

The following described property:

Parcel One (1):

Living Unit 411 of Summerlin Lofts Phase 1, a Condominium Subdivision, as shown by Map thereof on File in Book 129 of Plats, Page 41, and by amended final Plat on File in Book 136, of Plats, Page 67, both of Official Records of the County Recorder of Clark County, Nevada.

Parcel Two (2):

The exclusive right to use and occupy those certain Limited Common Elements (L.C.E.) appurtenant to Parcel One (1) as delineated on said Maps and as further described and defined in said Declaration of covenants, conditions and restrictions and grant and reservation of easements including, but not limited, to exclusive use storage Unit SU118 and exclusive use Parking Space Numbers P18 and P15 as depicted and delineated on said Maps.

Parcel Three (3):

An undivided fractional interest as Tenants in Common with others in and to the Common Elements as depicted and delineated on the Maps of said Subdivision and as described and defined in said Declaration of covenants, conditions and restrictions and grant and reservation of easements.

Parcel Four (4):

Non-exclusive easements for access, ingress, egress, use, enjoyment and other purposes over and across the Common Elements as further described and defined in said Declaration of covenants, conditions and restrictions and grant and reservation of easements and as depicted and delineated on Maps of said Subdivision.

Assessor's Parcel No: ██████████

EXHIBIT 1

Inst #: 201104070002921
Fees: $14.00
N/C Fee: $0.00
04/07/2011 02:06:37 PM
Receipt #: 733125
Requestor:
LSI TITLE AGENCY INC.
Recorded By: ANI  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

FIDELITY NATIONAL
RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
AND WHEN RECORDED MAIL DOCUMENT TO:
Bac Home Loans Servicing, LP
400 National waySIMI VALLEY, CA 93065

TS No. 11-0025697
TITLE
APN ████████████████████████

CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/21/2009,
EXECUTED BY: JAMES W PENGILLY,AS TRUSTEE OF THE JAMES W. PENGILLY TRUST,
DATED SEPTEMBER 22, 2003,TRUSTOR: TO RECON TRUST COMPANY, TRUSTEE AND
RECORDED AS INSTRUMENT NO. 201003290000124 ON 03/29/2010, OF OFFICIAL RECORDS IN
THE COUNTY RECORDER'S OFFICE OF CLARK COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:April 01, 2011                    BANK OF AMERICA, N.A.

State of:      TEXAS              )
County of:    TARRANT        )  BY  4-1-4
                                       Laura Dalley          , Authorized Signer

On 4-1-2011 before me    Ursulia Matthews          personally appeared Laura Dalley
_____, know to me (or proved to me on the oath of _____ or through
_____) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

URSULIA MATTHEWS
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-12-14

EXHIBIT 2

Inst #: 201111170002708
Fees: $15.00
N/C Fee: $25.00
11/17/2011 03:32:49 PM
Receipt #: 981534
Requestor:
DOCUMENT PROCUREMENT
Recorded By: KXC   Pgs: 2

**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

Tax Parcel: ███████████████    ②

Recording requested by:
COUNTRYWIDE HOME LOANS, INC

When recorded mail to:
BANK OF AMERICA, N.A.
DOCUMENT PROCESSING
TX2-979-01-19
4500 AMON CARTER BLVD
FORT WORTH, TX 76155
Attn: ASSIGNMENT UNIT

Mail tax statement to:
Bank of America, N.A.
1757 Tapo Canyon Road, #300
Simi Valley, CA 93063

CORPORATION ASSIGNMENT OF DEED OF TRUST
Doc. ID#
Commitment ████████████

For value received, the undersigned, COUNTRYWIDE HOME LOANS, INC, 1800 TAPO
CANYON ROAD, SIMI VALLEY, CA  93063, hereby grants, assigns and transfers to:
    GREEN TREE SERVICING LLC
    7360 SOUTH KYRENE RD, T330, TEMPE, AZ 85283
All beneficial interest under that certain Deed of Trust dated 12/23/09,
executed by: JAMES W PENGILLY, Trustor as per TRUST DEED recorded as
Instrument No. 201003290000124 on 3/29/10 in Book          Page
 of official records in the County Recorder's Office of CLARK County, NEVADA.
 Original Mortgage $414,400.00
1141 ALLERTON PARK DRIVE #411, LAS VEGAS, NV 89109

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

Dated: 09/29/2011      COUNTRYWIDE HOME LOANS, INC

                       By
                          BRIAN D. HILL, VICE PRESIDENT
State of California
County of Ventura

On 9-30-11 before me, JEANETTE R. ATLAS , Notary Public, personally
appeared BRIAN D. HILL, who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in
his/her their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _Jeanette R. Atlas_
           JEANETTE R. ATLAS

Prepared by: ANDREW BUI
1800 TAPO CANYON RD MC: CA6-914-01-43
SIMI VALLEY, CA 93063
Phone#: (213) 345-1194   Ext: 1105

JEANETTE R. ATLAS
Commission # 1927757
Notary Public - California
Los Angeles County
My Comm. Expires Mar 5, 2015

**EXHIBIT 2**



Tax Parcel: ▓▓▓▓▓▓▓

Inst #: 201303190000677
Fees: $19.00
N/C Fee: $0.00
03/19/2013 10:30:16 AM
Receipt #: 1639456
Requestor:
BANK OF AMERICA NA
Recorded By: KGP    Pge: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
BANK OF AMERICA, N. A.
SUCCESSOR BY MERGER TO
BAC HOME LOANS SERVICING, LP
FKA COUNTRYWIDE HOME
LOANS SERVICING, LP

**WHEN RECORDED MAIL TO:**
Bank of America, N.A.
Document Processing Mail Code:
TX2-979-01-19
4500 Amon Carter Blvd,
Fort Worth, TX 76155
Attn: Assignment Unit
Doc # ▓▓▓▓▓▓▓▓▓▓▓

This Space for Recorder's Use Only

TITLE OF DOCUMENT:

# Corrective Corporation
# Assignment of Deed of Trust

**This Assignment is being recorded to correct previously recorded Assignment of Deed of Trust recorded on 11/17/11 as Instrument # 201111170002708 Book N/A Page N/A of Official Records in the County Recorder's Office of Clark County, State of Nevada to correct the Assignor**

This Assignment is effective: September 29, 2011

THIS SPACE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

➤ 059-TITLE PAGE (R7/95)

**EXHIBIT 2**

Tax Parcel: ███████████

Recording requested by:
BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING, LP

When recorded mail to:
BANK OF AMERICA, N.A.
DOCUMENT PROCESSING MAIL
CODE: TX2-979-01-19
4500 AMON CARTER BLVD.
FORT WORTH, TX 76155
Attn: ASSIGNMENT UNIT

Mail tax statement to:
Bank of America, N.A.
1757 Tapo Canyon Road, #300
Simi Valley, CA 93063

CORRECTIVE CORPORATION ASSIGNMENT OF DEED OF TRUST
Doc. ID# ████████████
Commitment ████████████

For value received, the undersigned, BANK OF AMERICA, N.A. SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING,
LP, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and
transfers to:
   GREEN TREE SERVICING LLC
   7360 SOUTH KYRENE RD, T325, TEMPE, AZ 85283

All beneficial interest under that certain Deed of Trust dated 12/21/09,
executed by: JAMES W PENGILLY, Trustor as per TRUST DEED recorded as
Instrument No. 201003290000124 on 3/29/10 in Book ————— Page —————
of official records in the County Recorder's Office of CLARK County, NEVADA.
   Original Mortgage $414,400.00
1141 ALLERTON PARK DRIVE #411, LAS VEGAS, NV 89109

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

EXHIBIT 2

CORRECTIVE CORPORATION ASSIGNMENT OF DEED OF TRUST

Doc. ID#
Commitment ████████████

Dated: 03/12/2013          BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME
                          LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
                          SERVICING, LP

                          By
                              Maria Elena Andrade, Assistant Vice President

State of California
County of Ventura

On 03/12/2013 before me, Anita J. Calderon , Notary Public, personally
appeared Maria Elena Andrade, who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:  _Anita J. Calderon_

Prepared by: Maria Elena Andrade
1800 Tapo Canyon Road,
Simi Valley, CA 93063
Phone#: (213) 345-1562

ANITA J. CALDERON
Commission # 1931780
Notary Public - California
Ventura County
My Comm. Expires May 5, 2015

EXHIBIT 2

Inst #: 20191125-0001086
Fees: $40.00
11/25/2019 08:35:43 AM
Receipt #: 3910925
Requestor:
NATIONWIDE TITLE CLEARING I
Recorded By: GARCIAC   Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

The undersigned does hereby affirm that this document submitted for recording does not contain personal information about any person.

Parcel#: ▮▮▮▮▮▮

When Recorded Mail To:
Ditech Financial LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Prior# ▮▮▮▮▮▮
Custodian# ▮▮▮▮▮

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., BLDG 94, Mailstop T314, TEMPE, AZ 85284, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to **NEW RESIDENTIAL MORTGAGE LLC, WHOSE ADDRESS IS 1345 AVENUE OF THE AMERICAS, 45th FLOOR, NEW YORK, NY 10105 (212)798-6100, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **JAMES W PENGILLY, AS TRUSTEE OF THE JAMES W PENGILLY TRUST, DATED SEPTEMBER 22, 2003** and recorded as **Instrument # 201003290000124**, in the Recorder's office of **CLARK** County, **Nevada**.

**Dated this 25th day of November in the year 2019**
**DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC**

By: *Cmalliet*

**CARLY MALLIET**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**EXHIBIT 2**

Parcel#: ████████████
Prior#: ██████████
Custodian# ██████████

████████████████████████

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**
The foregoing instrument was acknowledged before me on this 25th day of November in the year 2019, by Carly Malliet as VICE PRESIDENT of DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

████████████████████████

████████████████████        ████████████████████

                ████████████

**EXHIBIT 2**

Prepared by: SALLY OH

LOAN #:

# NOTE

DECEMBER 21, 2009                          LAS VEGAS                          NEVADA
[Date]                                              [City]                                    [State]

1141 ALLERTON PARK DRIVE #411, LAS VEGAS, NV 89109
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $414,400.00      (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
BANK OF AMERICA, N.A.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of    5.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST        , day of each month beginning on  FEBRUARY 01, 2010    .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on  JANUARY 01, 2040     , I still owe amounts under this Note, I will pay those amounts in full on that date, which
is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,418.33

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as
a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan
charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which
exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe
under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial
Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN        calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3200  1/01
Fixed Rate Note
2005N-XX (09/08)(d/i)                                     Page 1 of 2

EXHIBIT 3

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

PAY TO THE ORDER OF

_____ (Seal)
                                  -Borrower
JAMES W. PENGILLY, INDIVIDUALLY AND AS TRUSTEE OF
THE JAMES W. PENGILLY TRUST UNDER TRUST INSTRUMENT
DATED SEPTEMBER 22, 2003, FOR THE BENEFIT OF JAMES W. PENGILLY

WITHOUT RECOURSE
BANK OF AMERICA, N.A.                 _____ (Seal)
                                                                      -Borrower
BY  *Michele Sjolander*
    MICHELE SJOLANDER
    SENIOR VICE PRESIDENT

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

*[Sign Original Only]*

**MULTISTATE FIXED RATE NOTE**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                Form 3200  1/01
Fixed Rate Note
2005N-XX (09/08)                                    Page 2 of 2

**EXHIBIT 3**

Inst #: 201210180002588
Fees: $20.00 N/C Fee: $0.00
RPTT: $0.00 Ex: #007
10/18/2012 03:40:12 PM
Receipt #: 1349324
Requestor:
**LEGAL WINGS**
Recorded By: TAH   Pgs: 5
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

( 5-1 )

**RECORDING COVER PAGE**
(Must be typed or printed clearly in BLACK ink only
and avoid printing in the 1" margins of document)

APN# ▮▮▮▮▮▮▮▮▮▮▮

(11 digit Assessor's Parcel Number may be obtained at:
http://redrock.co.clark.nv.us/assrrealprop/ownr.aspx)

### TITLE OF DOCUMENT
### (DO NOT Abbreviate)

## QUITCLAIM DEED

**Document Title on cover page must appear EXACTLY as the first page of the
document to be recorded.**

**RECORDING REQUESTED BY:**
James W. Pengilly

**RETURN TO: Name** James W. Pengilly
          **Address** 1755 Village Center Circle
          **City/State/Zip** Las Vegas, NV 89134

**MAIL TAX STATEMENT TO: (Applicable to documents transferring real property)**
          **Name** James W. Pengilly
          **Address** 1755 Village Center Circle
          **City/State/Zip** Las Vegas, NV 89134

This page provides additional information required by NRS 111.312 Sections 1-2.
An additional recording fee of $1.00 will apply.
To print this document properly—do not use page scaling.

# EXHIBIT 4

APN: ▮▮▮▮▮▮▮▮
WHEN RECORDED MAIL TO: James W. Pengilly
1755 Village Center Circle Las Vegas, NV 89134
& MAIL TAX STATEMENT TO: James W. Pengilly
1755 Village Center Circle Las Vegas, NV 89134

---

## QUITCLAIM DEED

R.P.T.T. $0.00 #7 transfer from a trust without consideration

THIS INDENTURE WITNESSETH: That

**James W. Pengilly and Amanda M. Pengilly, as Trustees of the James W. Pengilly Trust, dated September 22, 2003**

Do hereby Remise, Release, and Forever Quitclaim to James W. Pengilly, a married man as his sole and separate property all that real property situated in the City of Las Vegas, County of Clark, State of Nevada, described as follows:

See Exhibit A attached hereto and made a part hereof.

**GRANTOR HEREIN EXECUTES THIS INSTRUMENT FOR THE SOLE PURPOSE OF RELINQUISHING ANY AND ALL CLAIM OR CLAIMS OF PROPERTY INTEREST HE/SHE HAS OR MAY HAVE IN AND TO THE WITHIN DESCRIBED REAL PROPERTY**

SUBJECT TO: 1. Rights of Way, reservations, restrictions, easements, and conditions of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

Witness my hand this 17th day of October, 2012

_____                    _____
James W. Pengilly                          Amanda M. Pengilly

STATE OF NEVADA          )
                         ) ss:
COUNTY OF CLARK          )

On October 17, 2012, James W. Pengilly / Amanda Pengilly personally appeared before me, a Notary Public in and for said County and State, James W. Pengilly and Amanda M. Pengilly, who acknowledged to me that they executed the same.

WITNESS my hand and official seal.

_____
Notary Public in and for said County and State

STEPANIE A. HASS
S▮▮▮ IE A. HASS
N▮▮ ▮RY PUBLIC
S▮▮▮ OF NEVADA
▮ ▮▮. No. 11-4430-1
▮▮ ▮▮▮ Expires April 1, 2015

**EXHIBIT 4**

EXHIBIT "A"

**PARCEL ONE (1):**

LIVING UNIT 411 OF SUMMERLIN LOFTS PHASE 1, A CONDOMINIUM
SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 129 OF
PLATS, PAGE 41, AND BY AMENDED FINAL PLAT ON FILE IN BOOK 136, OF
PLATS, PAGE 67, BOTH OF OFFICIAL RECORDS OF THE COUNTY
RECORDER OF CLARK COUNTY, NEVADA.

RESERVING UNTO WEST CHARLESTON LOFTS, I, LLC, ITS SUCCESSOR,
ASSIGNS OR DELEGATES AN EASEMENT FOR INGRESS AND EGRESS FOR
MAINTENANCE PURPOSES OVER AND UPON THE LIMITED COMMON
ELEMENTS (L.C.E.) APPURTENANT TO PARCEL ONE (1) AS FURTHER
DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS (CCR'S)
RECORDED JUNE 5, 2007 IN BOOK  20070605 AS INSTRUMENT NO. 02661,
AND THE AMENDED AND RESTATED DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICTIONS AND GRANT AND RESERVATION OF
EASEMENTS (CCR'S) RECORDED JULY 3, 2007 IN BOOK 20070703 AS
INSTRUMENT NO. 01035, BOTH OF OFFICIAL RECORDS.

**PARCEL TWO (2):**

THE EXCLUSIVE RIGHT TO USE AND OCCUPY THOSE CERTAIN LIMITED
COMMON ELEMENTS (L.C.E.) APPURTENANT TO PARCEL ONE (1) AS
DELINEATED ON SAID MAPS AND AS FURTHER DESCRIBED AND DEFINED
IN SAID DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
AND GRANT AND RESERVATION OF EASEMENTS INCLUDING, BUT NOT
LIMITED, TO EXCLUSIVE USE STORAGE UNIT SU118 AND EXCLUSIVE USE
PARKING SPACE NUMBERS P18 AND P15 AS DEPICTED AND DELINEATED
ON SAID MAPS.

**PARCEL THREE (3):**

AN UNDIVIDED FRACTIONAL INTEREST AS TENANTS IN COMMON WITH
OTHERS IN AND TO THE COMMON ELEMENTS AS DEPICTED AND
DELINEATED ON THE MAPS OF SAID SUBDIVISION AND AS DESCRIBED
AND DEFINED IN SAID DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS.

EXHIBIT 4

**PARCEL FOUR (4):**

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE,
ENJOYMENT AND OTHER PURPOSES OVER AND ACROSS THE COMMON
ELEMENTS AS FURTHER DESCRIBED AND DEFINED IN SAID
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND
GRANT AND RESERVATION OF EASEMENTS AND AS DEPICTED AND
DELINEATED ON MAPS OF SAID SUBDIVISION.

EXHIBIT 4

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. ▓▓▓▓▓▓▓▓▓▓▓
   b. _____
   c. _____
   d. _____

2. Type of Property:
   | | | |
   |---|---|---|
   | a.☐ Vacant Land | b.☐ Single Fam. Res. | |
   | c.☑ Condo/Twnhse | d.☐ 2-4 Plex | |
   | e.☐ Apt. Bldg | f.☐ Comm'l/Ind'l | |
   | g.☐ Agricultural | h.☐ Mobile Home | |
   | ☐ Other | | |

   FOR RECORDERS OPTIONAL USE ONLY
   Book_____ Page:_____
   Date of Recording:_____
   Notes: *Trust cert* (DP)

3. a. Total Value/Sales Price of Property          $ n/a
   b. Deed in Lieu of Foreclosure Only (value of property ( _____ )
   c. Transfer Tax Value:                          $ n/a
   d. Real Property Transfer Tax Due               $ exempt

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section 7
   b. Explain Reason for Exemption: Transfer from trust without consideration

5. Partial Interest: Percentage being transferred: 100 %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature THE JAMES W. Pengilly TRUST   Capacity: GRANTOR/SELLER

Signature _____   Capacity: GRANTEE/BUYER

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
|---|---|
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name: James W. Pengilly Trust | Print Name: James W. Pengilly |
| Address: 1755 Village Center Circle | Address: 1755 Village Center Circle |
| City: Las Vegas | City: Las Vegas |
| State: Nevada        Zip: 89134 | State: Nevada        Zip: 89134 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: James W. Pengilly            Escrow # n/a
Address: 1755 Village Center Circle
City: Las Vegas            State: Nevada       Zip: 89134

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

EXHIBIT 4

Inst #: 201312190001201
Fees: $18.00 N/C Fee: $0.00
RPTT: $1137.30 Ex: #
12/19/2013 11:39:48 AM
Receipt #: 1877932
Requestor:
KE ALOHA HOLDINGS LLC
Recorded By: RYUD   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

(3)

Please mail tax statement and
when recorded mail to:
**Ke Aloha Holdings LLC**
~~━━━━━━━━~~
**9330 W. Sahara Ave. Ste 210**
**Las Vegas, NV 89117**

## FORECLOSURE DEED

APN # ▮▮▮▮▮▮▮
North American ▮▮▮▮▮▮▮

The undersigned declares:

Nevada Association Services, Inc., herein called agent (for the West Charleston Lofts Owners
Association), was the duly appointed agent under that certain Notice of Delinquent Assessment
Lien, recorded July 19, 2012 as instrument number 0001100 Book 20120719, in Clark County.
The previous owner as reflected on said lien is James W Pengilly as Trustee of the James W
Pengilly Trust Dated September 22, 2003. Nevada Association Services, Inc. as agent for West
Charleston Lofts Owners Association does hereby grant and convey, but without warranty
expressed or implied to: Ke Aloha Holdings LLC (herein called grantee), pursuant to NRS
116.31162, 116.31163 and 116.31164, all its right, title and interest in and to that certain property
legally described as: SUMMERLIN LOFTS PHASE 1 AMD, PLAT BOOK 136, PAGE 67,
UNIT 411 Clark County

AGENT STATES THAT:
This conveyance is made pursuant to the powers conferred upon agent by Nevada Revised
Statutes, the West Charleston Lofts Owners Association governing documents (CC&R's) and
that certain Notice of Delinquent Assessment Lien, described herein. Default occurred as set
forth in a Notice of Default and Election to Sell, recorded on 9/11/2012 as instrument # 0002635
Book 20120911 which was recorded in the office of the recorder of said county. Nevada
Association Services, Inc. has complied with all requirements of law including, but not limited
to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of
Default and the posting and publication of the Notice of Sale. Said property was sold by said
agent, on behalf of West Charleston Lofts Owners Association at public auction on 12/13/2013,
at the place indicated on the Notice of Sale. Grantee being the highest bidder at such sale,
became the purchaser of said property and paid therefore to said agent the amount bid $17,100.00
in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured
by the Delinquent Assessment Lien.

Dated: December 17, 2013

*Misty Blanchard*

By Misty Blanchard, Agent for Association and Employee of Nevada Association Services

## EXHIBIT 4

STATE OF NEVADA            )
COUNTY OF CLARK            )
On December 17, 2013, before me, Susana E. Puckett, personally appeared Misty Blanchard personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is
subscribed to the within instrument and acknowledged that he/she executed the same in his/her
authorized capacity, and that by signing his/her signature on the instrument, the person, or the entity
upon behalf of which the person acted, executed the instrument.
WITNESS my hand and seal.

(Seal)                                              (Signature)



SUSANA E. PUCKETT
Notary Public, State of Nevada
Appointment No. 11-4965-1
My Appt. Expires April 21, 2015

*Susana E. Puckett*

# EXHIBIT 4

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. ▮▮▮▮▮▮▮▮
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land          b. ☐ Single Fam. Res.
   c. ☑ Condo/Twnhse        d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg            f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural         h. ☐ Mobile Home
      ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

3.a. Total Value/Sales Price of Property          $ ~~17,100.00~~  17,100.00
   b. Deed in Lieu of Foreclosure Only (value of property (
   c. Transfer Tax Value:                         $ ~~222,886.00~~  222,886.00
   d. Real Property Transfer Tax Due              $ ~~1,137.30~~  1,137.30

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section_____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: 100   %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____          Capacity: _____

Signature _(signature)_           Capacity: NEMBER

**SELLER (GRANTOR) INFORMATION**          **BUYER (GRANTEE) INFORMATION**
       **(REQUIRED)**                          **(REQUIRED)**
Print Name: NEVADA ASSOCIATION SERVICES     Print Name: KE ALOHA HOLDINGS LLC
Address: 6224 W. DESERT INN Road            Address: 9330 W. SAHARA AVE STE 20
City: LAS VEGAS                              City: LAS VEGAS
State: NV        Zip: 89146                  State: NV        Zip: 89117

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: _____          Escrow # _____
Address: _____
City: _____          State: _____  Zip: _____

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

**EXHIBIT 4**

APN: ▮▮▮▮▮▮▮

Recording requested by and mail documents
and tax statements to:

Name: Ke Aloha Holdings Series II

Address: 9811 W Charleston Blvd Ste 2-351

City/State/Zip: Las Vegas, NV  89117

**DED104**
Nevada Legal Forms & Tax Services, Inc.
www.nevadalegalforms.com

Inst #: 20141231-0000744
Fees: $20.00 N/C Fee: $0.00
RPTT: $0.00 Ex: #001
12/31/2014 11:20:02 AM
Receipt #: 2267972
Requestor:
NEVADA LEGAL FORMS AND BOO
Recorded By: SOL  Pgs: 5
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

RPTT: 01 _____          # QUITCLAIM DEED

THIS INDENTURE WITNESS that the GRANTOR(S):

Ke Aloha Holdings LLC

for and in consideration of Zero _____, Dollars ($ 0.00 _____ )

do hereby QUITCLAIM the right, title and interest, if any, which GRANTOR may have in all that

real property, the receipt of which is hereby acknowledged, to the GRANTEE(S):

Ke Aloha Holdings Series II,
of the
Ke Aloha Holdings LLC,
A Nevada Series Limited-Liability Company

all that real property situated in the City of   Las Vegas   , County of   Clark   ,

State of   Nevada   , bounded and described as follows:

*(Set forth legal description and commonly known address)*

**COMMONLY KNOWN ADDRESS:**

11441 Allerton Park Drive Unit 411, Las Vegas, Nevada 89135

Page -1-

# EXHIBIT 4

**LEGAL DESCRIPTION:**

See Exhibit "A" attached hereto and by this reference made a part hereof.

Together with all and singular hereditament and appurtenances thereunto belonging or in any way appertaining to.

In Witness Whereof, I/We have hereunto set my hand/our hands on 30th day of December    , 20 14    .

_(signature)_

Signature of Grantor

Melani Schulte, Managing Member

Print or Type Name Here
Registrant: Mike Angell
Registrant registration number: NVDP20143316
3901 West Charleston Boulevard, Las Vegas, NV 89102, (702) 870-8977

STATE OF    NEVADA    )
COUNTY OF    CLARK    )

On this 30th day of    December    , 20 14    , personally appeared before me, a Notary Public, _____ Melani Schulte, Managing Member _____ ,
□ personally known to me OR □ proved to me on the basis of satisfactory evidence to be the person(s) described in and who executed the foregoing instrument in the capacity set forth therein, who acknowledged to me that they executed the same freely and voluntarily and for the uses and purposes therein mentioned. Witness my hand and official seal.

_(signature)_

Notary Public
My Commission Expires: _August 23, 2018_

Consult an attorney if you doubt this forms fitness for your purpose.

MIKE ANGELL
Notary Public State of Nevada
No. 97-0740-1
My Appt. Exp. Aug. 23, 2018

Page -2-

**EXHIBIT 4**



EXHIBIT "A"

**PARCEL ONE (1):**

LIVING UNIT 411 OF SUMMERLIN LOFTS PHASE 1, A CONDOMINIUM
SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 129 OF
PLATS, PAGE 41, AND BY AMENDED FINAL PLAT ON FILE IN BOOK 136, OF
PLATS, PAGE 67, BOTH OF OFFICIAL RECORDS OF THE COUNTY
RECORDER OF CLARK COUNTY, NEVADA.

RESERVING UNTO WEST CHARLESTON LOFTS, I, LLC, ITS SUCCESSOR,
ASSIGNS OR DELEGATES AN EASEMENT FOR INGRESS AND EGRESS FOR
MAINTENANCE PURPOSES OVER AND UPON THE LIMITED COMMON
ELEMENTS (L.C.E.) APPURTENANT TO PARCEL ONE (1) AS FURTHER
DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS (CCR'S)
RECORDED JUNE 5, 2007 IN BOOK  20070605 AS INSTRUMENT NO. 02661,
AND THE AMENDED AND RESTATED DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICTIONS AND GRANT AND RESERVATION OF
EASEMENTS (CCR'S) RECORDED JULY 3, 2007 IN BOOK 20070703 AS
INSTRUMENT NO. 01035, BOTH OF OFFICIAL RECORDS.

**PARCEL TWO (2):**

THE EXCLUSIVE RIGHT TO USE AND OCCUPY THOSE CERTAIN LIMITED
COMMON ELEMENTS (L.C.E.) APPURTENANT TO PARCEL ONE (1) AS
DELINEATED ON SAID MAPS AND AS FURTHER DESCRIBED AND DEFINED
IN SAID DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
AND GRANT AND RESERVATION OF EASEMENTS INCLUDING, BUT NOT
LIMITED, TO EXCLUSIVE USE STORAGE UNIT SU118 AND EXCLUSIVE USE
PARKING SPACE NUMBERS P18 AND P15 AS DEPICTED AND DELINEATED
ON SAID MAPS.

**PARCEL THREE (3):**

AN UNDIVIDED FRACTIONAL INTEREST AS TENANTS IN COMMON WITH
OTHERS IN AND TO THE COMMON ELEMENTS AS DEPICTED AND
DELINEATED ON THE MAPS OF SAID SUBDIVISION AND AS DESCRIBED
AND DEFINED IN SAID DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS.

EXHIBIT 4



**PARCEL FOUR (4):**

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE,
ENJOYMENT AND OTHER PURPOSES OVER AND ACROSS THE COMMON
ELEMENTS AS FURTHER DESCRIBED AND DEFINED IN SAID
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND
GRANT AND RESERVATION OF EASEMENTS AND AS DEPICTED AND
DELINEATED ON MAPS OF SAID SUBDIVISION.

EXHIBIT 4

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a. ▮▮▮▮▮▮▮
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land      b. ☐ Single Fam. Res.     FOR RECORDER'S OPTIONAL USE ONLY
   c. ☑ Condo/Twnhse    d. ☐ 2-4 Plex              Book:_____ Page:_____
   e. ☐ Apt. Bldg        f. ☐ Comm'l/Ind'l          Date of Recording:_____
   g. ☐ Agricultural     h. ☐ Mobile Home           Notes:
   ☐ Other_____

3. a. Total Value/Sales Price of Property                    $ 0.00
   b. Deed in Lieu of Foreclosure Only (value of property)  ( 0.00 )
   c. Transfer Tax Value:                                    $ 0.00
   d. Real Property Transfer Tax Due                         $ 0.00

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section  01
   b. Explain Reason for Exemption:  Transfer between affiliated business entities with
      identical common ownership (went from a Regular LLC to a Series LLC)

5. Partial Interest: Percentage being transferred:  100  %
      The undersigned declares and acknowledges, under penalty of perjury, pursuant to
NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
information and belief, and can be supported by documentation if called upon to substantiate the
information provided herein. Furthermore, the parties agree that disallowance of any claimed
exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
jointly and severally liable for any additional amount owed.

Signature _~signature~_                     Capacity  Grantor

Signature _~signature~_                     Capacity  Grantee

| **SELLER (GRANTOR) INFORMATION**<br>**(REQUIRED)** | **BUYER (GRANTEE) INFORMATION**<br>**(REQUIRED)** |
|---|---|
| Print Name:  Ke Aloha Holdings LLC | Print Name: Ke Aloha Holdings Series II* |
| Address:  9330 W Sahara Ave, Ste 210 | Address: 9811 W Charleston Blvd Ste 2-351 |
| City:  Las Vegas | City:  Las Vegas |
| State: NV          Zip: 89117 | State: NV          Zip: 89117 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name:  Nevada Legal Forms & Tax Services, Inc.    Escrow #:_____
Address: 3901 West Charleston Blvd
City:  Las Vegas                          State: NV      Zip: 89102

of the Ke Aloha Holdings LLC, A Nevada Series Limited-Liability Company

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

CCOR_DV_Form.pdf ~ 01/12/09

**EXHIBIT 4**

Inst #: 20150616-0003258
Fees: $17.00
N/C Fee: $0.00
06/16/2015 03:42:08 PM
Receipt #: 2461472
Requestor:
FIRST PRIORITY TITLE SERVIC
Recorded By: RYUD   Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN # 

## NOTICE OF DELINQUENT ASSESSMENT LIEN

In accordance with Nevada Revised Statutes and the Association's declaration of Covenants Conditions and Restrictions (CC&Rs), recorded on June 5, 2007, as instrument number 0002661 BK 20070605, of the official records of County of Clark County, Nevada, and as amended, the West Charleston Lofts Owners Association has a lien on the following legally described property.

The property against which the lien is imposed is commonly referred to as 11441 Allerton Park Drive #411 Las Vegas, NV 89135 particularly legally described as: SUMMERLIN LOFTS PHASE 1 AMD PLAT BOOK 136 PAGE 67 UNIT 411 in the County of County of Clark.

The owner(s) of record as reflected on the public record as of today's date is (are):
Ke Aloha Holdings Series II, of the Ke Aloha Holdings LLC, A Nevada Series Limited-Liability Company

Mailing address(es):
9330 W Sahara Ave Ste 210 Las Vegas, NV 89117

*Total amount due as of today's date is $12,330.22.

This amount includes late fees, collection fees and interest in the amount of $926.42
    * Additional monies will accrue under this claim at the rate of the claimant's regular assessments or special assessments, plus permissible late charges, any other permissible charges, costs of collection and interest, accruing after the date of the notice.
    Nevada Association Services, Inc. is a debt collector.  Nevada Association Services, Inc. is attempting to collect a debt.  Any information obtained will be used for that purpose.

Dated:  June 15, 2015

*Pearl Agustin*

By Pearl Agustin, of Nevada Association Services, Inc., as agent for West Charleston Lofts Owners Association

When Recorded Mail To:
Nevada Association Services
TS # N77915
6224 W. Desert Inn Rd, Suite A
Las Vegas, NV 89146
Phone: (702) 804-8885        Toll Free: (888) 627-5544

EXHIBIT 4

Inst #: 20150820-0001579
Fees: $18.00
N/C Fee: $0.00
08/20/2015 01:33:12 PM
Receipt #: 2532364
Requestor:
FIRST PRIORITY TITLE SERVIC
Recorded By: GWC   Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

APN #: ▓▓▓▓▓▓▓▓
NAS #:N77915
First Priority Title Service # ▓▓▓▓▓▓▓
Property Address: 11441 Allerton Park Drive #411

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
### HOMEOWNERS ASSOCIATION LIEN

#### IMPORTANT NOTICE

## WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE!

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION and you may have the legal right to bring your account in good standing by paying all your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account. No sale date may be set until ninety (90) days from the date this notice of default was mailed to you. The date this document was mailed to you appears on this notice.

This amount is $8,252.06 as of August 19, 2015 and will increase until your account becomes current.

While your property is in foreclosure you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage, or as required under your Covenants Conditions and Restrictions. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property or pay other obligations as required by your note and deed of trust or mortgage, or as required under your Covenants Conditions and Restrictions, West Charleston Lofts Owners Association (the Association) may insist that you do so in order to reinstate your account in good standing. In addition, the Association may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes and hazard insurance premiums.

Upon your request, this office will mail you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Association may mutually agree in writing prior to the foreclosure sale to, among other things, 1) provide additional time in which to cure the default by transfer of the property or otherwise; 2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your Association permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your Association.

To find out about the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Nevada Association Services, Inc. on behalf of West Charleston Lofts Owners Association, 6224 W. Desert Inn Road, Suite A, Las Vegas, NV 89146. The phone number is (702) 804-8885 or toll free at (888) 627-5544.

If you have any questions, you should contact a lawyer or the Association which maintains the right of assessment on your property.

## EXHIBIT 4

NAS # N77915

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.
## NOTICE IS HEREBY GIVEN THAT NEVADA ASSOCIATION SERVICES, INC.

is the duly appointed agent under the previously mentioned Notice of Delinquent Assessment Lien, with the owner(s) as reflected on said lien being Ke Aloha Holdings Series II, of the Ke Aloha Holdings LLC, A Nevada Series Limited-Liability Company, dated June 15, 2015, and recorded on June 16, 2015 as instrument number 0003258 Book 20150616 in the official records of County of Clark County, Nevada, executed by West Charleston Lofts Owners Association, and as amended, hereby declares that a breach of the obligation for which the Covenants Conditions and Restrictions, recorded on June 5, 2007, as instrument number 0002661 BK 20070605, as security has occurred in that the payments have not been made of homeowner's assessments due from 2/1/2014 and all subsequent homeowner's assessments, monthly or otherwise, less credits and offsets, plus late charges, interest, trustee's fees and costs, attorney's fees and costs and Association fees and costs.

That by reason thereof, the Association has deposited with said agent such documents as the Covenants Conditions and Restrictions and documents evidencing the obligations secured thereby, and declares all sums secured thereby due and payable and elects to cause the property to be sold to satisfy the obligations.

Nevada Association Services, Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose.

Nevada Associations Services, Inc., whose address is 6224 W. Desert Inn Road, Suite A, Las Vegas, NV 89146 is authorized by the association to enforce the lien by sale.

Legal Description: SUMMERLIN LOFTS PHASE 1 AMD PLAT BOOK 136 PAGE 67 UNIT 411 in the County of County of Clark

Dated: August 19, 2015

*Pearl Agustin*

By: Pearl Agustin, of Nevada Association Services, Inc.
on behalf of West Charleston Lofts Owners Association

When Recorded Mail To:
Nevada Association Services, Inc.
6224 W. Desert Inn Road, Suite A
Las Vegas, NV 89146
(702) 804-8885
(888) 627-5544

Nevada Association Services, Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose. Please be advised that this document constitutes neither a demand for payment of the referenced debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. This notice is being sent to any such parties merely to comply with applicable state law governing foreclosure of liens pursuant to Chapter 116 of Nevada Revised Statutes.

# EXHIBIT 4

Inst #: 20190109-0002527
Fees: $40.00
RPTT: $0.00  Ex #: 001
01/09/2019 03:07:16 PM
Receipt #: 3605218
Requestor:
KE ALOHA HOLDINGS LLC
Recorded By: ANI  Pge: 4
**DEBBIE CONWAY**
CLARK COUNTY RECORDER
Src: FRONT COUNTER
Ofc: MAIN OFFICE

**RECORDING REQUESTED BY:**
KE ALOHA HOLDINGS, LLC
**When Recorded Mail Document
and Tax Statement To:**
KE ALOHA HOLDINGS, LLC  C/O CENSO LLC
9811 W. Charleston Blvd #2-351
Las Vegas, NV 89117

APN: ▓▓▓▓▓▓▓▓▓▓
ADDRESS: 11441 Allerton Park Drive Unit 411, Las Vegas, NV 89135

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESS that the GRANTOR(S):  KE ALOHA HOLDINGS SERIES II, of
the  KE ALOHA HOLDINGS LLC,  A NEVADA SERIES LIMITED-LIABILITY COMPANY**

**In Consideration Of $10.00 and other VALUABLE CONSIDERATION, the receipt of which is
hereby acknowledged,** do(es) hereby GRANT, BARGAIN, SELL and CONVEY to the GRANTEE(S):
**CENSO LLC ,  a Nevada Limited Liability Company**

All that real property situated in Clark County, State of Nevada, bounded and described as follows:

See Exhibit "A" attached hereto and by reference, made part hereof.

SUBJECT TO:  1.  Taxes for the current fiscal year.
             2.  Covenants, Conditions, Reservations, Rights, Rights of Way and Easements
                 now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or
in anywise appertaining.

DATED: JANUARY 9, 2019

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before
me on     JANUARY 9, 2019
By     MELANI SCHULTE as Manager of
KE ALOHA HOLDINGS SERIES II,  of the
KE ALOHA HOLDINGS LLC,  A NEVADA
SERIES LIMITED-LIABILITY COMPANY

Signature _____
                            Notary Public

Amberlea Davis
Notary Public
14-14678-1 Exp 11/01/22

_____
MELANI SCHULTE, Manager
KE ALOHA HOLDINGS SERIES II,  of the
KE ALOHA HOLDINGS LLC, A NEVADA
SERIES LIMITED-LIABILITY COMPANY

**EXHIBIT 4**

## EXHIBIT "A"

**PARCEL ONE (1):**

LIVING UNIT 411 OF SUMMERLIN LOFTS PHASE 1, A CONDOMINIUM
SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 129 OF
PLATS, PAGE 41, AND BY AMENDED FINAL PLAT ON FILE IN BOOK 136, OF
PLATS, PAGE 67, BOTH OF OFFICIAL RECORDS OF THE COUNTY
RECORDER OF CLARK COUNTY, NEVADA.

RESERVING UNTO WEST CHARLESTON LOFTS, I, LLC, ITS SUCCESSOR,
ASSIGNS OR DELEGATES AN EASEMENT FOR INGRESS AND EGRESS FOR
MAINTENANCE PURPOSES OVER AND UPON THE LIMITED COMMON
ELEMENTS (L.C.E.) APPURTENANT TO PARCEL ONE (1) AS FURTHER
DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS (CCR'S)
RECORDED JUNE 5, 2007 IN BOOK 20070605 AS INSTRUMENT NO. 02661,
AND THE AMENDED AND RESTATED DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICTIONS AND GRANT AND RESERVATION OF
EASEMENTS (CCR'S) RECORDED JULY 3, 2007 IN BOOK 20070703 AS
INSTRUMENT NO. 01035, BOTH OF OFFICIAL RECORDS.

**PARCEL TWO (2):**

THE EXCLUSIVE RIGHT TO USE AND OCCUPY THOSE CERTAIN LIMITED
COMMON ELEMENTS (L.C.E.) APPURTENANT TO PARCEL ONE (1) AS
DELINEATED ON SAID MAPS AND AS FURTHER DESCRIBED AND DEFINED
IN SAID DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
AND GRANT AND RESERVATION OF EASEMENTS INCLUDING, BUT NOT
LIMITED, TO EXCLUSIVE USE STORAGE UNIT SU118 AND EXCLUSIVE USE
PARKING SPACE NUMBERS P18 AND P15 AS DEPICTED AND DELINEATED
ON SAID MAPS.

**PARCEL THREE (3):**

AN UNDIVIDED FRACTIONAL INTEREST AS TENANTS IN COMMON WITH
OTHERS IN AND TO THE COMMON ELEMENTS AS DEPICTED AND
DELINEATED ON THE MAPS OF SAID SUBDIVISION AND AS DESCRIBED
AND DEFINED IN SAID DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS.

**EXHIBIT 4**

**PARCEL FOUR (4):**

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE,
ENJOYMENT AND OTHER PURPOSES OVER AND ACROSS THE COMMON
ELEMENTS AS FURTHER DESCRIBED AND DEFINED IN SAID
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND
GRANT AND RESERVATION OF EASEMENTS AND AS DEPICTED AND
DELINEATED ON MAPS OF SAID SUBDIVISION.

EXHIBIT 4

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. ███████████████
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land    b. ☑ Single Fam. Res.
   c. ☐ Condo/Twnhse   d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg      f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural   h. ☐ Mobile Home
      ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

3.a. Total Value/Sales Price of Property    $ _____
   b. Deed in Lieu of Foreclosure Only (value of property ( _____ )
   c. Transfer Tax Value:                   $ _____
   d. Real Property Transfer Tax Due        $ _____

**4. If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section 01_____
   b. Explain Reason for Exemption: Transfer between affiliated business entities
      with identical common owners

5. Partial Interest: Percentage being transferred: 100  %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _~~Nh Chtte~~_    Capacity: GRANTOR / GRANTEE

Signature _____    Capacity: _____

| **SELLER (GRANTOR) INFORMATION** **(REQUIRED)** | **BUYER (GRANTEE) INFORMATION** **(REQUIRED)** |
|---|---|
| Print Name: KE ALOHA HOLDINGS LLC | Print Name: CENSO LLC |
| Address: 9811 W. CHARLESTON BL #2-351 | Address: 9811 W. CHARLESTON BL #2-351 |
| City: LAS VEGAS | City: LAS VEGAS |
| State: NV          Zip: 89117 | State: NV          Zip:89117 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| Print Name: | Escrow # |
|---|---|
| Address: | |
| City: | State:          Zip: |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

**EXHIBIT 4**

## ENTITY INFORMATION

### ENTITY INFORMATION

**Entity Name:**

KE ALOHA HOLDINGS LLC

**Entity Number:**

██████████

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Active

**Formation Date:**

12/16/2013

**NV Business ID:**

██████████

**Termination Date:**

Perpetual

**Annual Report Due Date:**

12/31/2020

**Series LLC:**

☑

**Restricted LLC:**

☐

EXHIBIT 5

## REGISTERED AGENT INFORMATION

**Name of Individual or Legal Entity:**

Amberlea Davis

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Non-Commercial Registered Agent

**NV Business ID:**

███████████

**Office or Position:**

**Jurisdiction:**

**Street Address:**

415 S 6TH ST STE 300, LAS VEGAS, NV, 89101, USA

**Mailing Address:**

**Individual with Authority to Act:**

**Fictitious Website or Domain Name:**

## OFFICER INFORMATION

☐ **VIEW HISTORICAL DATA**

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| Manager | MELANI SCHULTE | 9811 W CHARLESTON BLVD SUITE 2-351, LAS VEGAS, NV, 89117, USA | 12/29/2018 | Active |

**EXHIBIT 5**

**Page 1 of 1, records 1 to 1 of 1**

Filing History        Name History        Mergers/Conversions

Return to Search        Return to Results

EXHIBIT 5

---

**ENTITY INFORMATION**

**ENTITY INFORMATION**

**Entity Name:**

CENSO LLC

**Entity Number:**

█████████

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Active

**Formation Date:**

12/11/2018

**NV Business ID:**

████████

**Termination Date:**

Perpetual

**Annual Report Due Date:**

12/31/2020

**Series LLC:**

☐

**Restricted LLC:**

☐

EXHIBIT 5

4/27/2020

**REGISTERED AGENT INFORMATION**

**Name of Individual or Legal Entity:**

AMBERLEA DAVIS

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Non-Commercial Registered Agent

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

**Street Address:**

415 S 6th STE 300, LAS VEGAS, NV, 89101, USA

**Mailing Address:**

**Individual with Authority to Act:**

**Fictitious Website or Domain Name:**

**OFFICER INFORMATION**

☐ **VIEW HISTORICAL DATA**

| Title | Name | Address | Last Updated | Status |
|---|---|---|---|---|
| Manager | MELANI SCHULTE | 9811 W CHARLESTON BLVD 2-351, LAS VEGAS, NV, 89117, USA | 12/11/2018 | Active |

EXHIBIT 5

**Page 1 of 1, records 1 to 1 of 1**

Filing History          Name History          Mergers/Conversions

Return to Search          Return to Results

EXHIBIT 5

Case No. 2:14-cv-01463-RFB-NJK
UNITED STATES DISTRICT COURT DISTRICT OF NEVADA

# Pengilly v. Ke Aloha Holdings

Decided Oct 31, 2019

Case No. 2:14-cv-01463-RFB-NJK

10-31-2019

JAMES W. PENGILLY, Plaintiffs, v. KE ALOHA HOLDINGS et al., Defendants. AND ALL RELATED
COUNTER ACTIONS

RICHARD F. BOULWARE, II UNITED STATES DISTRICT JUDGE

## ORDER

## I. INTRODUCTION

Before the Court are Defendant Ke Aloha Holdings, LLC 's ("Ke Aloha") Motion for Release of Funds,
Defendant West Charleston Lofts Owners Association's Motion of Summary Judgment, and Defendant Ditech
Financial LLC f/ka/ Green Tree Servicing, LLC's ("Ditech") Motion for Summary Judgment. ECF Nos. 179,
183, and 184. For the following reasons, the Court grants Green Tree Servicing LLC's Motion for Summary
Judgment and Ke Aloha's Motion for Release of Funds and denies the other motions.

## II. PROCEDURAL BACKGROUND

Plaintiff James W. Pengilly ("Pengilly") began this case in the Eighth Judicial District Court of Clark County,
Nevada, where he sought quiet title and declaratory relief that a HOA foreclosure sale conducted pursuant to
Chapter 116 of the Nevada Revised Statutes ("NRS") in December 2013 was unlawful. ECF No. 1-2.

2  Defendant United States Internal Revenue Service *2 (the "IRS") removed the case to federal court on
September 10, 2014. ECF No. 1. The IRS answered the complaint on October 20, 2014. ECF No. 8.
Defendants Bill Blanchard, Douglas L. Crook, Erika Geiser, and Kenneth R. Sailley moved for summary
judgment on February 13, 2015, which Ke Aloha also joined on February 24, 2015. ECF Nos. 14, 15. Counter
Defendant West Charleston Lofts Owners Association filed a motion to dismiss on June 24, 2015. ECF No. 38.
On January 13, 2016, the Court denied all pending motions without prejudice so that discovery could continue.
ECF No. 70. On March 30, 2016, the parties filed new motions for summary judgment. ECF Nos. 81 - 85. On
March 31, 2017, the Court stayed the case pending petitions for writs of certiorari before the United States
Supreme Court in two relevant cases. Bourne Valley Ct. Tr. v. Wells Fargo Bank, N.A., 832 F.3d 1154 (9th Cir.
2016), cert. denied, 137 S. Ct. 2296 (2017); Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home
Mortg., 388 P.3d 970 (Nev. 2017). ECF No. 142. On April 10, 2019, the Court lifted the stay. ECF No. 178.
The instant motions were filed on May 17, 2019. ECF Nos. 181, 183, 184.

## III. FACTUAL BACKGROUND

The Court makes the following findings of disputed and undisputed facts:

 casetext

1

EXHIBIT 6

### a. Undisputed Facts

This matter concerns a nonjudicial foreclosure on a property located at 11441 Allerton Park, # 411, Las Vegas, Nevada 89109 (the "property"). The property sits in a community governed by the West Charleston Lofts Owners Association (the "HOA"). The HOA requires its community members to pay HOA dues.

On or about December 21, 2009, James W. Pengilly, as trustee of the James W. Pengilly Trust, obtained a loan from Bank of America, N.A. ("BANA") in the amount of $414,000. The deed of trust was recorded against the property on March 29, 2010. The deed listed Pengilly as the *3 borrower, BANA as the lender, and Recon Trust Company as the trustee. On April 7, 2011, BANA recorded an assignment of the deed of trust to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP. On November 17, 2011, an assignment of the deed of trust was recorded, showing that Countrywide Home Loans, Inc. had assigned the deed of trust to Ditech on September 29, 2011. On March 19, 2013 a corrective corporation assignment of the deed of trust was recorded, showing that BANA, as successor by merger to BAC Home Loans Servicing had assigned the deed of trust to Ditech effective September 29, 2011.

Pengilly fell behind on HOA dues. Between September 2013 and December 2013, the HOA, through its agent, recorded a notice of delinquent assessment lien, followed by a notice of default and election to sell, and finally a notice of foreclosure sale. On or around December 13, 2013, Ke Aloha purchased the property as evidenced by a foreclosure deed recorded on December 19, 2013.

However, Federal National Mortgage Association ("Fannie Mae") previously purchased the note and the deed of trust in January 2010. While its interest was never recorded under its name, Fannie Mae continued to maintain its ownership of the note and the deed of trust at the time of the foreclosure. Ditech serviced the note and was listed as the beneficiary of the deed of trust, on behalf of Fannie Mae, at the time of the foreclosure sale.

The relationship between Fannie Mae and its servicers is governed by Fannie Mae's Single-Family Servicing Guide ("the Guide").[1] The Guide provides that servicers may act as record / / / *4 beneficiaries for deeds of trust owned by Fannie Mae. It also requires that servicers assign the deeds of trust to Fannie Mae on Fannie Mae's demand. The Guide states:

> [1] The Court takes judicial notice of the publicly recorded documents related to the deed of trust and the foreclosure as well as Fannie Mae's Single-Family Servicing Guide. Fed. R. Evid. 201 (b), (d); Berezovsky v. Moniz, 869 F.3d 923, 932-33 (9th Cir. 2017) (judicially noticing the substantially similar Freddie Mac Guide); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (permitting judicial notice of undisputed matters of public record). --------

The servicer ordinarily appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, including (but not limited to) the receipt of legal notices that may impact Fannie Mae's lien, such as notices of foreclosure, tax, and other liens. However, Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary to protect its ... ownership of the mortgage loan, including recordation of a mortgage assignment, or its legal equivalent, from the servicer to Fannie Mae or its designee. In the event that Fannie Mae determines it necessary to record such an instrument, the servicer must assist Fannie Mae by [ ] preparing and recording any required documentation, such as mortgage assignments, powers of attorney, or affidavits; and [by] providing recordation information for the affected mortgage loans.



EXHIBIT 6

The Guide also allows for a temporary transfer of possession of the note when necessary for servicing activities, including "whenever the servicer, acting in its own name, represents the interests of Fannie Mae in ... legal proceedings." The temporary transfer is automatic and occurs at the commencement of the servicer's representation of Fannie Mae. The Guide also includes a chapter regarding how servicers should manage litigation on behalf of Fannie Mae. But the Guide clarifies that "Fannie Mae is at all times the owner of the mortgage note[.]" Finally, under the Guide, the servicer must "maintain in the individual mortgage loan file all documents and system records that preserve Fannie Mae's ownership interest in the mortgage loan."

Finally, the Guide "permits the servicer that has Fannie Mae's [limited power of attorney] to execute certain types of legal documents on Fannie Mae's behalf." The legal documents include full or partial releases or discharges of a mortgage; requests to a trustee for a full or partial reconveyance or discharge of a deed of trust, modification or extensions of a mortgage or deed of trust; subordination of the lien of a mortgage or deed of trust, conveyances of a property to certain entities; and assignments or endorsements of mortgages, deeds of trust, or promissory notes to certain entities. *5

In 2008, Congress passed the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4511 *et seq.*, which established the Federal Housing Finance Agency ("FHFA"). HERA gave FHFA the authority to oversee the government-sponsored enterprises Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Enterprises"). In accordance with its authority, FHFA placed the Enterprises, including Fannie Mae, under its conservatorship in 2008. Neither FHFA nor Fannie Mae consented to the foreclosure extinguishing Fannie Mae's interest in the property in this matter.

**b. Disputed Facts**

The Court finds there to be no material disputed facts.

**IV. LEGAL STANDARD**

**a. Motion for Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

**b. Wrongful Enjoinment Under Fed. R. Civ. P. 65(c)** *6 Rule 65(c) of the Federal Rules of Civil Procedure allows the Court to issue preliminary injunctions or temporary restraining orders "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A party is considered wrongfully enjoined or restrained when, "it turns out [that] the party enjoined had the right all along to do what it was enjoined from doing." Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir. 1994). There is a rebuttable presumption that the wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond. Id.


EXHIBIT 6

## V. DISCUSSION

### a. Summary Judgment Motion

The Federal Foreclosure Bar, 46 U.S.C. § 4617(j)(3), resolves this matter. The Ninth Circuit has held that the Federal Foreclosure Bar preempts foreclosures conducted under NRS Chapter 116 from extinguishing a federal enterprise's property interest while the enterprise is under the FHFA's conservatorship unless the FHFA affirmatively consented to the extinguishment of the interest. Berezovsky, 869 F.3d at 927-31. Under Berezovksy, summary judgment based on the Federal Foreclosure Bar is warranted if the evidence establishes that the enterprise had an interest in the property at the time of the HOA foreclosure sale. Id. at 932- 33. The Court finds that the evidence establishes that Fannie Mae had an interest in the property at the time of the HOA foreclosure sale.

7    Despite Berezovsky, Ke Aloha argues that summary judgment is not warranted because at the time of the HOA sale, the publicly recorded documents showed Ditech as the beneficiary of / / / *7 the deed of trust. Ke Aloha also argues that NRS 111 prevents an unrecorded interest from being asserted against it, and that the Federal Foreclosure Bar does not apply to bona fide purchasers.

The Court finds that none of these arguments have merit. In Daisy Trust v. Wells Fargo Bank, N.A., the Nevada Supreme Court upheld the application of the Federal Foreclosure Bar in a case substantially similar to this one, holding that it was not necessary for the deed of trust beneficiary to have publicly recorded its interest in order to establish that it was the owner of the loan at the time of the foreclosure sale. 445 P.3d 846, 849 (Nev. 2019). The Nevada Supreme Court also specifically considered and rejected whether the recordation statutes of NRS 106.210 or NRS 111.325 required that the enterprise record its interest, and rejected those arguments, finding that internal documents and printouts from the enterprise's internal database were sufficient to show a principal-agency relationship between the record deed of trust beneficiary and the government sponsored enterprise. Id. at 848 - 50. Furthermore, because the Nevada Supreme Court found that Nevada's recording statutes did not require the government sponsored enterprise to publicly record its ownership interest, the Nevada Supreme Court found it unnecessary to address arguments that a party's status as a bona fide purchaser insulates it from the Federal Foreclosure Bar's effect. Id. at 849. Thus this Court adopts that same reasoning and does not address Ke Aloha's bona fide purchaser argument here.

Here, as in Daisy Trust, Plaintiffs attach printouts from Fannie Mae's Servicer and Investor Reporting ("SIR") electronic database. The printouts are accompanied by a declaration of Graham Babin, an employee of Fannie Mae. Babin translates the printouts and identifies the Guide. He also specifically identifies the portions of the printouts that detail the date that Fannie Mae acquired the note and the deed of trust and that recount the servicing history of the loan. The Court finds this evidence sufficient to support the fact that there was a
8    principal-agency relationship between *8 Fannie Mae and the record beneficiary of the deed of trust, such that Fannie Mae owned the loan on the date of the foreclosure sale.

Based on the foregoing, the Court grants summary judgment in favor of Ditech and declares that the Federal Foreclosure Bar prevented the foreclosure sale from extinguishing Fannie Mae's interest in the property. The Court finds this holding to be decisive as to all claims in this matter and dismisses the remaining claims as a result.

### b. Motion to Release Funds

 casetext

EXHIBIT 6

The Court now discusses Ke Aloha's unopposed motion for release of funds deposited with the Court Clerk's registry. Ke Aloha attaches to its unopposed motion documents, primarily an email, that purport to establish that Pengilly has relinquished all rights to the property. As Ke Aloha has now established a superior right to the property at issue, Ke Aloha argues that it is entitled to the funds previously deposited by Pengilly with the Court, as the deposits were made solely for Ke Aloha's benefit in the event that it was wrongfully enjoined. The Court notes that in the state court hearing in which the original preliminary injunction issued, there was a hearing in which the state court determined the appropriate monthly bond amount to be $1,200, a finding that this Court upheld at a hearing and subsequently issued written order. ECF Nos. 37, 41. The Court further notes that under Local Rule 7-2, Pengilly is deemed to have consented to the motion as no opposition has been filed. For these reasons, the Court thus finds that Ke Aloha is entitled to have the bond executed in its favor and grants the motion to release funds.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Ditech's Motion for Summary Judgment (ECF No. 184) is granted as to its quiet title claim. The Court quiets title and declares that Defendant Ke Aloha acquired the property subject to Fannie Mae's deed of trust. *9

**IT IS FURTHER ORDERED** that Defendant West Charleston Lofts Owners Association's Motion for Summary Judgment (ECF No. 183) is dismissed as moot, as the Court has dismissed the claims upon which this motion was based.

**IT IS FURTHER ORDERED** that Defendant Ke Aloha Holding's LLC's Motion to Release Funds (ECF No. 179) is granted. Defendant Ke Aloha shall submit to the Court within 7 days of the date of this order the name and address where the funds deposited with the Clerk of the Court should be sent. The Court will then issue a separate written order directing release of all funds plus interest to the address designated by Defendant Ke Aloha Holdings, LLC.

**IT IS FURTHER ORDERED** that the Clerk of the Court is instructed to close this case.

**DATED**: October 31, 2019 .

/s/  _____

**RICHARD F. BOULWARE**, II

**UNITED STATES DISTRICT JUDGE**



5

# EXHIBIT 6

**Fill in this information to identify the case:**

Debtor name    Censo LLC.

United States Bankruptcy Court for the:    DISTRICT OF NEVADA

Case number (if known)    19-16636

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property     12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

■ No. Go to Part 2.
☐ Yes Fill in the information below.

**All cash or cash equivalents owned or controlled by the debtor**       Current value of debtor's interest

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

■ No. Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.

---

Official Form 206A/B       Schedule A/B Assets - Real and Personal Property       page 1

EXHIBIT 7

| Debtor | Censo LLC. | Case number *(If known)* 19-16636 |
|---|---|---|
| | Name | |

☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No. Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No. Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
■ Yes Fill in the information below.

**55.    Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.  1161 Dana Maple Court, Las Vegas, NV 89123 | Single Family Residence | $0.00 | Comparable sale | $219,374.00 |
| 55.2.  5900 Negril Avenue, Las Vegas, NV 89130 | Single Family Residence | $0.00 | | $295,966.00 |
| 55.3.  11441 Allerton Park Dr. # 411, Las Vegas, NV 89135 | Single Family Residence | $0.00 | | $358,268.00 |

| 56. | **Total of Part 9.** | | $873,608.00 |
|---|---|---|---|
| | Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88. | | |

**57.    Is a depreciation schedule available for any of the property listed in Part 9?**
■ No
☐ Yes

**58.    Has any of the property listed in Part 9 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 10: | Intangibles and intellectual property |
|---|---|

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                      Best Case Bankruptcy

EXHIBIT 7

Debtor    Censo LLC.
_____
Name                                                                                              Case number *(If known)*  19-16636

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

**Part 11:**   **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

|  |  | Current value of debtor's interest |
|---|---|---|
| 71. | **Notes receivable** Description (include name of obligor) |  |
| 72. | **Tax refunds and unused net operating losses (NOLs)** Description (for example, federal, state, local) |  |
| 73. | **Interests in insurance policies or annuities** |  |
| 74. | **Causes of action against third parties (whether or not a lawsuit has been filed)** |  |
| 75. | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** Potential claims against mortgage servicers and/or lenders from properties purchased through HOA foreclosure sale(s). | $0.00 |

Nature of claim
Amount requested                                             _____
                                                                            $0.00

| 76. | **Trusts, equitable or future interests in property** |  |
|---|---|---|
| 77. | **Other property of any kind not already listed** *Examples:* Season tickets, country club membership |  |
| 78. | **Total of Part 11.** Add lines 71 through 77. Copy the total to line 90. | $0.00 |

**79. Has any of the property listed in Part 11 been appraised by a professional within the last year?**
■ No
☐ Yes

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                                    Best Case Bankruptcy

EXHIBIT 7

Debtor    Censo LLC.
          Name

Case number *(If known)*  19-16636

| Part 12: | Summary |
| --- | --- |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
| --- | --- | --- |
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9* ......................................> | | $873,608.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 | + 91b. $873,608.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $873,608.00 |

EXHIBIT 7

# McCarthy ◆ Holthus

*A Limited Liability Partnership*
*A Multijurisdictional Law Firm*
**9510 West Sahara Avenue, Suite 200**
**Las Vegas, NV 89117**
**Telephone (702) 685-0329**
**Facsimile (866) 339-5691**
**www.McCarthyHolthus.com**
Email to all personnel:
First initial and last name@mccarthyholthus.com

4/21/2020

**Debtor Counsel**
Corey B. Beck
becksbk@yahoo.com

**Trustee**

USTPRegion17.lv.ecf@usdoj.gov

Re:    Matter:              Censo LLC.
          Case No.:           19-16636-mkn
          Loan No. ending with:  2880
          Property:           1141 Allerton Park Drive #411, Las Vegas, NV 89109
          M&H File:         NV-20-160941

Dear Sir(s)/Madam(s),

Please be advised that this office represents the secured creditor who's holding the first/second mortgage in regards to the real property referenced above.

This letter will serve as the required notice under Local Rule 4001(a)(2), for the above-referenced case that the above referenced Debtor is delinquent on mortgage payments and our office has been retained to file a motion for relief from the automatic stay.

If your client is interested in the resolution of this matter please select from one of the following options and return this correspondence via facsimile 866-339-5691, within 72 hours of the date above:

_____           Debtor is in active loan modification (copy of agreement attached)

_____           Debtor is current (and evidence of payments will be provided within 2 business days of the return of this correspondence)

_____           Debtor is seeking a loan modification (copy of most recent application attached)

| **Arizona Office** | **California Office** | **Colorado Office** | **Idaho Office** | **New Mexico Office** | **Oregon Office** | **Texas Office** | **Washington Office** |
|---|---|---|---|---|---|---|---|
| 8502 E. Via De Ventura Blvd., Suite 200 Scottsdale, AZ 85258 (480) 302-4250 Facsimile (480) 302-4101 | 411 Ivy Street San Diego, CA 92101 (619) 685-4800 Facsimile (619) 685-4811 | 7700 E. Arapahoe Road, Suite 230 Centennial, CO 80112 (877) 369-6122 Facsimile (866) 894-7369 | 702 W. Idaho St. Suite 1100 Boise, ID 83702 (208) 947-7264 Facsimile (208) 947-5910 | 6501 Eagle Rock NE, Suite A-3 Albuquerque, NM 87113 (505) 219-4900 Facsimile (505) 750-9803 | 920 SW 3rd Avenue, 1st Floor Portland, OR  97204 (971) 201-3200 Facsimile (971) 201-3202 | 1255 West 15th Street, Suite 1060 Plano, TX 75075 (214) 291-3800 Facsimile (214) 291-3801 | 108 1st Ave South, Suite 300 Seattle, WA 98104 (206) 596-4856 Facsimile (206) 274-4902 |

# EXHIBIT 8

_____          Debtor has not previously applied for, or been denied for, loan modification and would like information about loan modification

_____          Debtor seeking time to cure the post-petition arrears through an adequate protection agreement; please provide a breakdown of the post-petition arrears (not available to Debtor in Chapter 7)

_____          Debtor will stipulate to relief effective: _____

_____          Other: _____
_____
_____
_____ (include any applicable attachments).


We will review your response and provide a proposed stipulation for resolution, if requested, or obtain additional details responsive to your request.  Please remember the intent of this process is to resolve an agreed upon default and is subject to our client approval.

If you have no opposition to the relief requested no response is required (though a response is always appreciated).  If you believe there are other issues, please contact the undersigned counsel at 877-369-6122.

In the event we do not receive an adequate response within 72 hours, we will proceed with a motion for relief from stay pursuant to the United States Bankruptcy Code.

Regards,

 _/s/  Michael Chen_____
Michael Chen, Esq.

# EXHIBIT 8