# SECTION 362 INFORMATION COVER SHEET

DEBTOR: Censo LLC.

BANKRUPTCY NO. 19-16636-mkn          MOTION #: _____

MOVANT: NewRez LLC d/b/a Shellpoint Mortgage Servicing
CHAPTER: 11

---

Certification of Attempt to Resolve the Matter Without Court Action:

Moving counsel hereby certifies that pursuant to the requirement of LR 4001(a)(2), the subject property has been identified as being surrendered in the plan and/or schedules, or an attempt has been made to resolve the matter without court action, but movant has been unable to do so.

Date: 7/28/2020          Signature: /s/ Michael Chen, Esq. Attorney for Movant

---

PROPERTY INVOLVED IN THIS MOTION: 5900 Negril Avenue, Las Vegas, NV 89130

NOTICE SERVED ON: Debtor: Censo LLC.; Debtor's counsel, Corey B. Beck; Trustee, U.S. Trustee - LV - 11.

DATE OF SERVICE: 07/10/2020; See attached as **Exhibit "7"**

| MOVING PARTY'S CONTENTIONS: | | | DEBTOR'S CONTENTIONS: |
|---|---|---|---|
| The EXTENT and PRIORITY OF LIENS: | | | The EXTENT and PRIORITY OF LIENS: |
| 1st  NewRez LLC d/b/a Shellpoint Mortgage Servicing | $ | 517,569.54 | 1st |
| 2nd | $ | | 2nd |
| 3rd | $ | | 3rd |
| 4th | $ | | Other |
| Total Encumbrances: | $ | 517,569.54 | Total Encumbrances: |
| APPRAISAL or OPINION as to VALUE: | $ | 295,966.00 | APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT with the DEBTOR | OFFER OF "ADEQUATE PROTECTION" for MOVANT: |
|---|---|
| Amount of Note:          $328,000.00<br>Interest Rate:               6.125%<br>Duration:                     30 Years<br>Payment per month:    $2,352.54<br>Date of Default:            09/01/10<br>Amount Arrears:          $278,385.35<br>Recording NOD:         NOS:<br>SPECIAL CIRCUMSTANCES: The debtor has failed to offer adequate-protection payments. The Debtor is not in contractual privity with Movant.<br>Submitted by:  Michael Chen<br>Signature:     /s/ Michael Chen | SPECIAL CIRCUMSTANCES:<br><br><br><br>Submitted by:<br><br>Signature: |

FORM 362/10/95

INSTRUCTIONS
for Section 362 Cover Sheet

To expedite the hearing of Section 362 motions for relief from the automatic stay, the moving party shall complete and file with the motion a copy of this Cover Sheet. The Cover Sheet requires a statement of the nature and extent of the liens on the Debtor's property at issue. The movant must show at least the status of the issue. The movant must show at least the status of the movant's lien and any senior liens. At the Court's discretion, the motion may be denied if this exhibit has not been completed and filed, unless the information is not applicable (such as for motions to lift stay to allow pending litigation to proceed).

This Cover Sheet shall be attached to the front of the motion and a copy served on the debtor. The debtor shall indicate disagreement on the right of the Cover Sheet. The debtor shall file the completed Cover Sheet to the Debtor's formal response or opposition to the motion.

Special circumstances that would compel the granting or denial of the requested relief shall be set forth briefly on the bottom of this Cover Sheet and shall be explained more fully in the motion or response.

NOTICING REQUIREMENTS

The Court will not hear motions not properly noticed. Unless the Court otherwise orders, twenty-eight (28) days notice of all motions for relief from the automatic stay must be served on the Debtor, the Debtor' attorney and, where applicable, the Chapter 7 trustee, the Chapter 13 standing trustee, or the Chapter 11 trustee. See Bankruptcy Rules 4001, 9014, and 7004, and the Local Rules of Practice for the District of Nevada, LR 4001, and LR 9013.

Kristin A. Schuler-Hintz, Esq., SBN 7171                                       E-filed: 7/28/2020
Michael Chen, Esq., SBN 7307
9510 West Sahara Avenue, Suite 200
Las Vegas, NV 89117
Phone (702) 685-0329
Fax (866) 339-5691
NVBK@McCarthyHolthus.com

Attorney for Secured Creditor, NewRez LLC d/b/a Shellpoint Mortgage Servicing, its assignees and/or successors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No. 19-16636-MKN |
| | ) |
| Censo LLC., | ) Chapter 11 |
| | ) |
| Debtor. | ) **NEWREZ LLC D/B/A SHELLPOINT** |
| | ) **MORTGAGE SERVICING'S MOTION** |
| | ) **FOR RELIEF FROM AUTOMATIC STAY** |
| | ) **and MOTION TO ACCOUNT FOR AND** |
| | ) **SEQUESTER RENTAL INCOME AND/OR** |
| | ) **FOR ADEQUATE PROTECTION** |
| | ) |
| | ) |
| | ) HEARING: |
| | ) DATE:    9/2/2020 |
| | TIME:    9:30am |
| | CTRM:   2 |
| | PLACE:  300 Las Vegas Boulevard South, Las Vegas, NV 89101 |

**NewRez LLC d/b/a Shellpoint Mortgage Servicing, its assignees and/or successors in interest** ("Secured Creditor" herein), moves this Court for an Order Terminating the Automatic Stay of 11 U.S.C. § 362, and Motion To Account For and Sequester Rental Income And/or For Adequate Protection, as to moving party (and the Trustee under the Deed of Trust securing moving party's claim) so that moving party and its Trustee may, enforce its rights under applicable state law, or at its election, seek to modify the loan, relative to the Note and

1

1  Deed of Trust secured by the Debtor's property, commonly known as 5900 Negril Avenue, Las
2  Vegas, NV 89130 ("Property" herein).

3      Secured Creditor is the holder of a Promissory Note dated 05/04/2006, in the principal
4  amount of $328,000.00, which is secured by the Deed of Trust of the same date.  **See Exhibit**
5  **"1".**  A true and correct copy of the Note is attached hereto as **Exhibit "3".**  Movant, directly or
6  through an agent, has possession of the Note.  Movant is an entity entitled to enforce the Note.

7      A true and correct copy of the assignment of deed of trust is attached hereto as **Exhibit**
8  **"2"**. It is significant to note that the Debtor is not in contractual privity with Movant with respect
9  to the aforementioned Promissory Note/Deed of Trust.  The original borrowers to the Note are
10 Peter Arsaga and Melissa Arsaga (nee Hexum), and appear completely unrelated to Debtor.  The
11 Debtor is limited liability company that is in title to the subject real property by way of a
12 "homeowner's association" ("HOA") foreclosure sale from 2013.  The original purchaser at the
13 HOA foreclosure sale was Ke Aloha Holdings, LLC.  Title thereafter flowed from KE Aloha,
14 LLC to Ke Aloha Series I, LLC, and then to the instant Debtor in early 2019.  All of the above
15 LLCs are owned/managed by Melani Schulte.  Please see the chain of deed conveyances as
16 **Exhibit "4**."  The instant Debtor is the third LLC entity to hold title, and appears to have been
17 created only recently (in December 2018, and then acquiring title to the subject real property in
18 January 2019).  Please see the attached Nevada Secretary of State records for Censo, LLC, and
19 Ke Aloha Holdings, LLC, as **Exhibit "5,"** and in conjunction with **Exhibit "4."**  This sequence
20 of events indicates that the LLC entity was created to hold bare legal title to propert(ies) rather
21 than being an established business entity in the community.

22     The current market value of the Debtor's subject Property is $295,966.00, based upon the
23 Debtor's own value as set forth in Schedule A. **See Exhibit "6"**.  The property is not the primary
24 residence of the Debtor.  See Debtor's Schedules generally, as Dkt. Nos 1 and 22.

25     Based upon Secured Creditor's past practices, it is expected that the cost of sale of the
26 property will be at least eight to ten percent of the value of the property. In the present case, the
27 Debtor has no equity in the Property, as evidenced by the approximate market value compared
28 to the total liens against the Property, principally that of Secured Creditor herein and the other
29 liens as noted in this Motion.

2

| | | |
|---|---|---:|
| Value | $ | 295,966.00 |
| Total Liens to Secured Creditor | $ | 517,569.54 |
| Less 8% Cost of Sale | $ | 23,677.28 |
| Equity | $ | (245,280.82) |

Based on the foregoing, Secured Creditor alleges that there is no equity in the subject property, the subject property is not necessary for an effective reorganization, and Secured Creditor is not adequately protected. In accordance with Local Rule 4001(a)(2), on 07/10/2020, Secured Creditor sent a Meet and Confer letter to the parties of interest herein in an attempt to communicate in good faith regarding resolution of the instant motion. To date, Secured Creditor has been unable to resolve this matter, and the Debtor has not offered any form of adequate protection payments, and as a result, brings this motion. See **Exhibit "7"**.

Secured Creditor is not receiving any adequate protection payments, and is unfairly delayed from proceeding with the foreclosure of the subject Property. The loan is in substantial default with payments (119 payments). Accordingly, relief from the automatic stay should be granted to Secured Creditor pursuant to 11 U.S.C. § 362(d)(1) and (2).

The Debtor filed this subject bankruptcy petition on 10/11/2019.

Shellpoint services the underlying mortgage loan and note for the property referenced in this Motion for NewRez LLC d/b/a Shellpoint Mortgage Servicing. In the event the automatic stay in this case is modified, this case dismisses, and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed.

Pursuant to the terms of the Deed of Trust, a payment received is applied to the account and credited to the next due payment. For example, a payment received in December will be applied to the November payment if no payment had been received in November.

With respect to Secured Creditor's Deed of Trust, the following is now due:

**Total Due**

| | | | | | |
|---|---|---|---|---|---|
| Unpaid Principal Balance: | | | | $ | 309,765.54 |
| Accrued Interest as of 07/10/2020: | | | | $ | 170,327.10 |
| Escrow Advances as of 07/10/2020: | | | | $ | 29,994.70 |
| DELINQUENCIES: | | | | | |
| Monthly Payments: (09/01/10 through 06/01/12) | 22 | at | $2,277.00 | $ | 50,094.00 |
| Monthly Payments: (07/01/12 through 06/01/16) | 48 | at | $2,234.12 | $ | 107,237.76 |
| Monthly Payments: (07/01/16 through 07/01/17) | 13 | at | $2,269.17 | $ | 29,499.21 |
| Monthly Payments: (08/01/17 through 10/01/17) | 3 | at | $2,261.40 | $ | 6,784.20 |
| Monthly Payments: (11/01/17 through 10/01/18) | 12 | at | $2,333.87 | $ | 28,006.44 |
| Monthly Payments: (11/01/18 through 10/01/19) | 12 | at | $2,342.39 | $ | 28,108.68 |
| Monthly Payments: (11/01/19 through 07/01/20) | 9 | at | $2,352.54 | $ | 21,172.86 |
| Non-Escrow Advances: | | | | $ | 7,482.20 |
| **Total Delinquencies:** | | | | **$** | **278,385.35[1]** |
| **Total Due to Secured Creditor:** | | | | **$** | **517,569.54** |

In addition reasonable attorney fees and court filing costs not to exceed $1,231.00 will be incurred for representation in this matter.

Furthermore, additional "cause" exists pursuant to Sec. 362(d)(1) due to the non-routine nature of the Debtor entity herein. The conduct leading up to the current filing truly challenges/undermines general bankruptcy principles that afford legitimately distressed individuals access to bankruptcy relief: typically a Debtor files due to insolvency, ie, that is unable to pay its debts as they come due. The secured debt here was not incurred by the Debtor in the course of purported ongoing business operations; it simply and knowingly inured into a debt laden asset subject to Secured Creditor's lien with no intention of fully paying that lien, and instead filed the subject bankruptcy to force Secured Creditor into cramdown of the loan/lien that the Debtor was never a party to. It can hardly be said that this Debtor indeed merits bankruptcy

---

[1] This is not a reinstatement quote and may not include any additional advances or costs having been incurred, paid or coming due since filing the instant motion.

relief, in the traditional sense, as a <u>proven</u> business concern that fell on hard times and needs rehabilitation. Debtor will claim that it is indeed a "small business" that is utilizing Chapter 11 to re-organize its affairs, but in reality this "spin" on its character completely turns Chapter 11 bankruptcy law on its head. It is well settled law that Chapter 11 was meant to "permit business debtors to reorganize and restructure their debts in order to revive the debtors' businesses and thereby preserve jobs and protect investors." *In re Continental Airlines Corp.*, 38 B.R. 67, 71 (Bankr. SD Tex. 1984). Also stated another way, "[t]he purpose of Chapter 11 reorganziation is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *In re Winshall Settlor's Trust*, 785 F.2d 1136, 1137 (6th Cir. 1985); *In re: Dolton Lodge Trust Co.*, 22 B.R. 918, 921 (Bankr. ND Ill. 1982) (citing Congressional intent of Chapter 11, H.R. Rep No.95-595, U.S. Code Cong. & Admin News 1978, p.5787). See also, *In re Powers*, 135 B.R. 980, 996 (Bankr.C.D. Cal.1981) (quoting *In Re Victory Constr. Co., Inc.*, 9 B.R. 549, 565 (Bankr.C.D.Cal. 1981)). The clear intention is to <u>re-organize an existing business concern</u> in the hopes of maintaining the business concern into the future, ultimately for the company's/public good.

Counter-intuitively, this entity is not re-organizing in Chapter 11 but rather organizing under the aegis of the automatic stay, and this is a purpose that runs contrary to the Bankruptcy Code. What this Debtor attempts to do is buy time in which to allegedly create a "business" where none existed before, and utilize the Code to its own full advantage and sole benefit. This is akin to a startup/joint venture's (actually an adventurer's) business model abusing the technical benefits of the Code, and thus washing away legitimate creditors right into a windfall. The relief of the automatic stay was never contemplated as a "breathing spell" for a contemporaneously created business to "get off the ground." This was never the intent of the Code, and turns the stated justification of Chapter 11 literally upside down.

More importantly, "cause" exists to terminate the stay since this Debtor cannot reorganize this "debt" in the manner which it desires to do so. As mentioned above, this Debtor has absolutely no debtor/creditor relationship to Movant pursuant to 11 U.S.C. Sec 101(10)(A) and 101(5): creditor means an entity that has a "claim" against the debtor that arose at the time of or before the order for relief concerning the debtor, and "claim" is defined as a right to payment…or right to an equitable remedy for breach of performance if such a breach gives rise to a right to payment. In this case, it is undisputed that the Debtor has no contractual privity with

Movant such that it is obligated to "pay" Secured Creditor or conceivably be in "default": The loan agreement secured by the subject Deed of Trust is as between Movant and its non-debtor borrower Peter/Melissa Arsaga. There is no agreement whatsoever with respect to this loan/debt as between Debtor and Movant herein.

Furthermore, 11 U.S.C. Sec. 102(2) is no more comfort to Debtor in expanding the definition of "claim" to a non-recourse "claim" arising from, as in this case, a third party contract against the debtor's property. The legislative history of Sec. 102(2) states that:

> "claim against the debtor" includes claim against the property of the debtor. This paragraph is intended to cover nonrecourse loan agreements where the creditor's only rights are against the property of the debtor, and not against the debtor personally. Thus such an agreement would give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code."

S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978).

In this case, the Debtor cannot claim any existence of a nonrecourse agreement as between these parties that would fall within the intended definition of "claim" under Sec. 102(2) as contemplated by the drafters mentioned above.

Finally, the Debtor's reading of *Johnson v. Home State Bank*, for the proposition that "claim" under sec. 101(5) can be broadly interpreted to encompass this factual scenario, is flawed and is largely confined to the unique facts of that case. See *In re Kizelnik*, 190 B.R. 171 (Bankr. S.D.N.Y. 1995), stating that *Johnson* should be limited to its particular facts, i.e. where a single mortgagor whose Chapter 13 bankruptcy is preceded by one under Chapter 7, to avoid allowing "any stranger" from filing bankruptcy and subjecting the mortgagee to modification under a plan. The facts under *Johnson* did indeed have, unlike that contemplated in the legislative history of 11 U.S.C. Sec. 102(2) and in contrast to the facts here, an actual contractual privity as between debtor and mortgage creditor, and thus its reasoning is not truly instructive or applicable herein. Again, the absolute lack of contractual privity undermines application of Sec. 102(2) or *Johnson* into any reasonable finding of a debtor/creditor relationship here.

This effort to seek modification of 3rd party debts/contracts runs contrary to established bankruptcy principles. The case of *In re Wright*, 183 B.R. 541 (Bankr. C.D. Ill. 1995) is directly on point herein.

The facts in *Wright* are very similar to those at hand: the original borrowers/titleholders conveyed real property into a Chapter 12 debtor. The Debtor then attempted to reorganize the debt/secured claim in its bankruptcy case. The court in *Wright* pointed out that relevant analysis as to the propriety of confirmation was the lack of a proper debtor/creditor relationship:

> It is undisputed that there is no agreement between Debtor and [lender] concerning these loans. There being no written agreement as between Debtor and [lender] whereby the Debtor has obligated himself to pay the debt to [lender] incurred by the [original borrower]. Nor is there a nonrecourse loan agreement between the Debtor and [lender] which permits the [lender] to proceed against the Debtor's property, but not against the Debtor personally. It therefore follows that [lender] is not a creditor under Sec. 101(10) and (5) because there is neither a right to payment from the Debtor nor a "claim against the property of the debtor" as that term was intended to be applied. When the Debtor obtained title to and possession of the real estate and personal property he did so subject to the mortgage and security agreement, but without any obligation to repay the loans they secured. Nothing in the Bankruptcy Code empowers this Court to impose an agreement between the Debtor and the [lender], or permit the Debtor to reorganize a debt that is not his, on loans that are not his, nor can he modify the terms of loans to which he is not bound.

*Wright* at 543. Based on the above, the court in *Wright* terminated the automatic stay, denied confirmation, and dismissed the case.

Other courts have agreed with the reasoning in *Wright*. See, e.g. *In re Jones*, 98 B.R. 757, 758 (Bankr. N.D. Ohio 1989) ("Because the debtor is not liable on the mortgage, there exists no debt owing to the Bank; the Bank has no claim against the Debtor; and there exists no creditor – debtor relationship."); *In re Kizelnik*, 190 B.R. 171, 176 (Bankr. S.D.N.Y. 1995) (dismissing the case where the debtor had no contractual relationship with the bank, recognizing the bizarre result that would ensue otherwise from having to tell the bank "it may not foreclose on its collateral so long as a stranger to the mortgage, who accepts no personal liability for the indebtedness, chooses to make payments"); *In re Parks*, 227 B.R. 20, 23-24 (Bankr. W.D.N.Y. 1998) ("To revive an agreement under which the debtor had no rights, or to revive a legal status that only someone other than the debtor may assert, is nonsensical…[t]here are many policy reasons why one should not be permitted to acquire property…that is subject to a lien, and then use Sec. 1322(b)(2) power to 'modify' against the lienor who never dealt with that debtor.").

The cautionary tale of *Parks* is quite telling of the circumstances herein: that the conduct of the Debtor truly pushes the limits of interpretation of the operation of Bankruptcy Code sections

into absurd extremes. The Debtor's conduct of reorganizing debts of another is in violation of the Sec. 524 (in effect a discharge of a 3rd party non-debtor). Furthermore, the Debtor's intention to sidle itself into a loan transaction that it was not a party to is tantamount to compelling an unwilling creditor into a loan assumption and/or compelling the extension of post-petition financing in denigration of the mandates and/or principles underlying Sec. 364 and 365.

Finally, the Debtor has failed to expeditiously move the case forward since the initial case filing. The Docket indicates several motions to extend deadlines, but the Debtor has failed to take advantage of such extensions. There is currently no disclosure statement or proposed plan of reorganization of record thus far. The Debtor's income is de minimus, and it appears that reorganization is a remote possibility given the Debtor's small income indicated in the monthly operating reports, and in relation to the amount of debt in this case: Debtor's own estimation of secured debt is over 1.4 million dollars (see latest Monthly Operating Report, Dkt. No. 60, page 7).

For all of the above reasons, "cause" exists to terminate the automatic stay pursuant to 11 U.S.C. Sec. 362(d)(1).

## MOTION FOR ORDER COMPELLING THE DEBTOR TO SEQUESTER, ACCOUNT FOR, AND TURNOVER ALL RENTS SPRINGING FROM THE SUBJECT REAL PROPERTY IS APPROPRIATE PURSUANT TO 11 U.S.C. § 552(b)

Pursuant to 11 U.S.C § 552(b):

Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, rents, of profits of such property, then such security interest extends to such proceeds, products, offspring, rents, of profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and the applicable nonbankruptcy law, except to the extent that the court, after notice and hearing and based on the equities of the case, orders otherwise.

In this case, Secured Creditor's deed of trust has either an explicit or implicit assignment of rents clause inherent to the security interest in its favor. See **Exhibit "1"** and/or Nev. Rev. Stat. 107A.230(1):

8

An enforceable security instrument creates an assignment of rents arising from the real property described in the security instrument, unless the security provides otherwise.

It is unquestionable that the rents spring from the subject real property constitute additional secured collateral in favor of Movant, and furthermore Secured Creditor has a superior right to any other party, including the Debtor, pursuant to Nev.Rev.Stat. 107A.240(3): "…a perfected security interest in rents takes priority over the rights of a person that, after the security interest is perfected:

(a) Acquires a judicial lien against the rents or the real property from which the rents arise;

In this case, and as indicated in monthly operating reports, the Debtor has been receiving rents from the subject property. See Monthly Operating Reports as Dkt Nos. 30, 31, 43, 44, 49, 50 and 60. The Debtor fails to segregate the funds generated by the subject property, and is thus in violation of 11 U.S.C. Sec. 363(c)(4): "the trustee shall segregate and account for any cash collateral in the trustee's possession, custody or control." Sequestration is automatic under the statute, see *In re Scottsdale Medical Pavillion*, 159 B.R. 295, 302 (9th Cir. BAP 1993). If a secured creditor requests such sequestration of rent, then the court has a duty to preserve such rents for the holder of the subject trust deed in which it springs. See *In re American Continental Corporation*, 105 B.R. 564, 57; *Saline State Bank v. Mahloch*, 834 F.2d 690,696 (8th Cir. 1987); *In re Johnson*, 62 B.R. 24, 29 (9th Cir. B.A.P. 1986); *In re Oak Glenn R-Vee*, 8 B.R. 213, 216 (Bankr. C.D.Cal. 1981).

Pursuant to sec. 363, the rents herein are "cash collateral," subject to segregation, and may not be utilized by the Debtor without Movant's consent or Court approval. To date, 10 months since the case filing and 9 months after receiving rental income streams, the Debtor has not sought any such secured creditor authorization and Court approval for use of the case collateral.

The existence of cash collateral in which Secured Creditor has interest in, is related to the concept of "adequate protection" for such creditors. It is well established that the debtor in possession must provide adequate protection of creditor's interest as a condition of using/authorization for use of cash collateral pursuant to 11 U.S.C. Sec. 363(e). See *In re*

9

*Scottsdale Medical Pavillion*, at 302.  Pursuant to 11 U.S.C. Sec. 361, a court may ensure that a creditor receives adequate protection of its interest in collateral by requiring the debtor to make "periodic cash payments" or to provide "additional or replacement liens" by "granting such other further relief…as will [permit] the indubitable equivalent of such entity."  Although the concept of adequate protection was designed to be flexible, to permit courts to "adapt to varying circumstances and changing modes of financing," any means the court adopts for providing such protection must ensure that "secured creditor receives the value for which he bargained." Sen.Rep.No. 95-989, 95th Cong. 2d Sess. 83 (1978); Accord H.R. No. 95-595, 95th Cong., 1st Sess. 339 (1978).  The concept of adequate protection is derived from the Fifth Amendment protection of property interests as enunciated by the United States Supreme Court in such cases as *Wright v. Union Central Life Ins. Co*., 311 U.S. 273, *reh'g denied*, 313 U.S. 711 (1940) and *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935).

In this matter, the Secured Creditor is not adequately protected.  The Secured Creditor is entangled in a bankruptcy filing by a third party entity (corporate entity) that has no contractual/actual relationship with such Debtor entity.  Secured Creditor entered into a residential real estate mortgage loan transaction with an unrelated individual(s), and was pursuing its remedies as against that individual/mortgage loan contract.  Without this Secured Creditor's consent and/or knowledge, the Debtor inures into title of the subject property, allows it to be rented and intercepts a rental stream in which Secured Creditor has a security interest.  This Debtor then files for bankruptcy relief and prevents Secured Creditor from pursuit of its legal rights as against its borrower and collateral AND berefts it of a stream of payment in which it is entitled to.  In this atypical and prejudicial factual circumstances, the concept of "adequate protection" must reach a high standard herein so as to comport with principles in *Wright*, et al. At the very least, the converted rental income must be sequestered, accounted for, ultimately turned over to Secured Creditor pursuant to its security interest and clear mandates under 11 U.S.C. Sec. 552.

Furthermore, the concept of "adequate protection" (which is also related to the aforementioned Motion for Relief from Stay) must include substantially more than this stream of rental payment income.  In traditional circumstances, and where there is indeed a debtor/creditor

relationship, then a stream of payments based on the existing long term debt finance structure can be the basis for "adequate protection" arrangements during the pendency of the bankruptcy case. But here in this case, there clearly is no contractual/actual relationship between these parties (that exists only with Secured Creditor and its unrelated borrower), and therefore may not be a basis for an "adequate protection" determination. The situation here is that a creditor was hauled into bankruptcy by a "stranger" to its transaction, who has never been contractually obligated to the debt in question, cannot have "defaulted" on said debt, but yet compels a creditor into such debt relationship and would ostensibly seek to modify it against the will of the creditor. This is tantamount to a forced loan assumption by the Debtor and/or compelled post-petition financing in favor of the Debtor, and coupled with the "blindsiding" of a creditor in pursuit of it's legal remedies in unrelated transaction(s), absurdly derogates principles of bankruptcy operation on multiple levels. Because of this, any notion of "adequate protection" herein, even if this Court were to accept that some semblance of a debtor/creditor relationship exists here (which it does not), must revolve around the full payoff of its claim in very short order. Because of the aggressive and over-reaching nature of the Debtors' intentions here, the bar of "adequate protection" must be equally as high. Accordingly, the Secured Creditor would demand "adequate protection" monthly payments equal to $1/12^{th}$ of its total claim herein during the pendency of this case, with termination of the automatic stay upon a 10 default on any of these payments.

WHEREFORE, Secured Creditor prays for judgment as follows:

1. For an Order granting relief from the automatic stay, permitting Secured Creditor to pursue their rights under applicable State and Federal Law to recover the property or to modify the loan.

2. For an Order for the immediate pre-confirmation accounting, segregation, and/or distribution of any rental income stream funds being held as adequate protection for Secured Creditor, in the event that relief from stay is not granted.

3. For an Order that the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

11

4. For an Order modifying the automatic stay to protect Secured Creditor's interest, as the Court deems proper.

5. For attorneys' fees and costs incurred herein.

6. For such other relief as the Court deems proper.

Dated: July 28, 2020                                          McCarthy & Holthus, LLP


By: /s/ Michael Chen
Michael Chen, Esq.
Kristin A. Schuler-Hintz, Esq.
Attorney for Secured Creditor
NewRez LLC d/b/a Shellpoint Mortgage Servicing, its assignees and/or successors