ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
NICHOLAS E. BELAY, ESQ.
Nevada Bar No. 15175
**AKERMAN LLP**
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone: (702) 634-5000
Facsimile:  (702) 380-8572
Email: ariel.stern@akerman.com
Email: natalie.winslow@akerman.com
Email: nicholas.belay@akerman.com

*Attorneys for NewRez, LLC dba Shellpoint Mortgage Servicing*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>CENSO, LLC,<br><br>　　　　　Debtor. | Case No.:   BK-19-16636-mkn<br><br>Chapter 11<br><br>**NEWREZ, LLC DBA SHELLPOINT MORTGAGE SERVICING'S OPPOSITION TO CENSO, LLC'S MOTION FOR CONTEMPT FOR VIOLATION OF INTERIM ADEQUATE PROTECTION ON FIRST LIEN SECURED BY REAL PROPERTY AT 5900 NEGRIL AVENUE, LAS VEGAS, NEVADA 89130** |

NewRez, LLC dba Shellpoint Mortgage Servicing (**Shellpoint**) opposes Censo, LLC's motion for contempt for violation of interim adequate protection on first lien secured by real property at 5900 Negril Avenue, Las Vegas NV 89130. [**ECF No. 161**].

**I.   INTRODUCTION.**

The crux of Censo's motion is that Shellpoint somehow "hindered" Censo's efforts to comply with the interim adequate protection order and this "hinderance" constitutes contempt. *See* Mot. at 4. This argument fails for several reasons.

{58742748}

**First**, Shellpoint has not taken a single affirmative step to prevent Censo's compliance with the interim adequate protection order, nor has it taken any action to terminate the automatic stay with this court. Censo appears to believe that a mere temporary disagreement as to whether Censo was performing its obligations under the protection order gives rise to a contempt motion. Neither law nor fact support such a position.

**Second**, even accepting Censo's allegations as true, Censo does not (and cannot) point to any specific language in the protection order that Shellpoint supposedly violated. The moving party bears the burden of showing by clear and convincing evidence that the contemnors violated "a specific and definite order of the court." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002). At best, Censo's motion is based on a *hypothetical* scenario where Shellpoint moves to lift the automatic stay "without proper basis." Shellpoint has not brought such a motion or requested such relief, nor does it currently intend to based on any of the conduct detailed in Censo's motion.[1]

**Third**, even if sanctions were warranted (and they are not), Censo has not proven actual damages. By Censo's own admission, Shellpoint has cashed each check Censo has sent pursuant to the protection order. Further, at no point in time has Shellpoint made any demand to Censo for reimbursement of the tax or liability insurance payments described in Censo's motion. If anything, the fact that Shellpoint covered these payments while transitioning out of escrow in accordance with the interim adequate protection order provides a windfall for Censo, not damages. The court should deny Censo's motion in full.

## II. PROCEDURAL AND BANKRUPTCY BACKGROUND.

1. Censo filed for chapter 11 bankruptcy relief on October 11, 2019 in case no. 19-16636-mkn.

2. Censo and Shellpoint entered into a stipulated interim adequate protection order on January 27, 2021. [ECF No. 146]. The stipulation included affirmative obligations on Censo to make payments to Shellpoint and maintain the property.

---

[1] Shellpoint reserves all rights regarding any future violations of the interim protective order.

{58742748}                                2

3. The court approved the parties' stipulated interim adequate protection order on February 2, 2021. [ECF No. 149].

4. On April 5, 2021, counsel for Shellpoint sent a letter to Censo's counsel regarding insufficient payments. Shellpoint believed Censo was behind on payments based on the way its internal system categorized Censo's payments on the loan. *See* Ex. 4 to Mot. (explaining Censo's payments appeared to apply to amounts predating the default correspondence). Notwithstanding this initial position, Censo concedes Shellpoint applied each payment it made. *See* Exs. 3, 5-6 to Mot. At no point in time has Shellpoint rejected any payments from Censo. Further, at no point in time has Shellpoint requested reimbursement for the tax or insurance payments referenced in Censo's motion.

5. Shellpoint has not moved to lift the automatic stay or argued to this court that Censo violated the interim adequate protection order. *See generally*, Docket. Notwithstanding this fact, Censo filed its motion for contempt based on the mere hypothetical that Shellpoint would bring such a motion or request such relief. *See* Schulte Decl. at ¶ 11.

### III. LEGAL STANDARD.

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (internal quotation omitted). Before imposing civil contempt sanctions, the court must find the defendant knew of the order, and the actions which violated the order were intentional. *See In re Dyer*, 322 F.3d 1178, 1190-91 (9th Cir. 2003). Alternatively, civil contempt sanctions may be imposed where the defendant failed to remedy the violation after learning of it. *See Cal. Emp't Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151-52 (9th Cir. 1996). For sanctions such as attorney's fees to be justified, the court must find the defendant acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126 (1991)

. . .

## IV. ARGUMENT.

### A. Shellpoint did not prevent Censo from complying with the protection order.

Censo contends Shellpoint has somehow "purposely hindered" its efforts to comply with the interim adequate protection order. Mot. at 4. Notwithstanding the fact that vaguely "hindering" a party does not equate to contempt of a court order, Censo fails to provide any argument to support this rogue allegation. This is because no such argument exists. The interim adequate protection order requires that Censo: (1) make regular monthly payments to Shellpoint of $1,733.00; (2) provide proof of insurance on or before January 31, 2021 and continue to maintain insurance; and (3) maintain property tax and HOA assessment obligations. *See* Protection Order at 3, ECF No. 146. Censo admits Shellpoint accepted its monthly payments on the loan. *See* Exs. 3, 5-6 to Mot. Censo also admits it currently maintains insurance on the property and the taxes are up to date. Mot. at 2. Shellpoint has never raised any contention to the contrary. The only dispute between the parties concerned whether Censo was up to date on its monthly payments. Mot. at 1, 2. This dispute had nothing to do with Censo's ability to *make* those payments under the order, and at no point in time did Shellpoint reject any payments from Censo. Censo's allegation that Shellpoint prevented it from complying with the court's order entirely lacks merit.

### B. Shellpoint has not violated any provision of the protection order.

To show contempt, Censo has the burden of proving by clear and convincing evidence that Shellpoint violated a "specific and definite order of the court." *In re Bennett*, 298 F.3d at 1069. For sanctions such as fees to be justified, the court must find the defendant acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers*, 501 U.S. at 44.

Here, Censo does not even attempt to point to any provision in the protection order that Shellpoint supposedly violated, much less provide clear and convincing evidence that such purported violation was willful or in bad faith. Censo's sole contention is that Shellpoint violated the order by not "acknowledging" its monthly payments and failing to "honor" the agreement as to taxes and

{58742748}                                              4

1   property insurance. Mot. at 4.  A plain reading of the interim adequate protection order forecloses
2   Censo's meritless contentions.

3   **First**, nowhere in the order did Shellpoint assume any affirmative obligation to
4   "acknowledge" payments.  If Censo wanted such a provision as part of the parties' stipulation, it
5   could have included it.  As is, the only obligation created in the order is for *Censo* to make regular
6   monthly payments to Shellpoint.  A mere disagreement as to whether Censo was current on its
7   payments in no way constitutes Shellpoint violating a "specific and definite order of the court."
8   Shellpoint initially and reasonably believed Censo was behind on payments based on the way its
9   internal system listed those payments in the loan history.  There was nothing "willful" or in bad faith
10  about Shellpoint's position, and Censo provides zero evidence to the contrary.  Further, at no point
11  has Shellpoint moved this court to lift the automatic stay, or else sought any relief against Censo for
12  a violation of the protection order.  Censo's position is based entirely on hypotheticals which have
13  not even been raised.

14  **Second**, the protection order requires Censo to maintain current insurance and keep property
15  tax/assessments up to date. *See* Protection Order at 3.  Again, the obligation in the order falls on
16  Censo, not Shellpoint.  Neither party contests the property insurance and taxes are current.  The only
17  language in the protection order that even slightly implicates Shellpoint is the statement that
18  Shellpoint "shall **then** de-escrow the loan for taxes and insurance" after Censo provides proof of
19  insurance and up-to-date taxes/assessments.  *Id.* (emphasis added).  The order thus specifically
20  contemplates that Shellpoint will de-escrow *after* Censo provides the required proof, which is
21  precisely what happened. *See* **Exhibit A** (showing no portion of payment applied to escrow).
22  Notably, there is no timeframe by which Shellpoint needed to complete de-escrowing the loan.  As
23  Shellpoint has plainly complied with this provision (along with the other provisions), there is no
24  basis to hold it in contempt.  And even if the court finds Shellpoint failed to comply with a part of
25  the order, Censo has provided no evidence to show any such violation was willful or in bad faith.
26

{58742748}                                                5

**Third**, the underlying rationale behind Censo's motion—that Shellpoint may hypothetically move to lift the stay without proper basis—is facially deficient. It is well-established federal courts are unable to render advisory opinions. *In re Elias*, 215 B.R. 600, 604 (B.A.P. 9th Cir. 1997), *aff'd*, 188 F.3d 1160 (9th Cir. 1999); *see also In re MacNeil*, 907 F.2d 903, 904 (9th Cir. 1990) (noting opinions applying law to a hypothetical state of facts is improper). Censo's motion is nothing more than an attempt to preemptively oppose a request for relief Shellpoint has not even raised. Censo's own supporting declaration concedes this to be the case. *See* Ex. 5 to Mot., Schulte Decl. at ¶¶ 10, 11. This alone warrants denying Censo's motion.

### C. Censo has not proven actual damages.

The bankruptcy court's civil contempt power, which the Ninth Circuit has held is conferred on the bankruptcy court by section 105(a) of the Bankruptcy Code, is limited. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002). The United Supreme Court has made clear that *any* sanctions imposed upon a litigant that are neither "calibrate[d] to [the] damages caused by" the violation in question nor designed to coerce compliance with a court order, are punitive in nature and thus implicate the criminal contempt power. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 and n.4 (2017); *see also In re McLean*, 794 F.3d 1313, 1323 (11th Cir. 2015) ("Punitive sanctions . . . take the form of a fixed fine and have no practical purpose other than punishment . . . [P]unitive sanctions are for offenses already completed.").

Censo has not shown by clear and convincing evidence it has suffered any actual damages. No actual damages exist. Censo's motion is based on a hypothetical scenario where Shellpoint raises to the court that Censo was not complying with the interim adequate protection order. Shellpoint has made no such representation to the court. Further, as demonstrated above, Shellpoint has in no way prevented Censo from complying with its obligations. A mere temporary disagreement as to whether Censo was current on its payments does not constitute "actual damage," especially where Shellpoint still accepted and applied Censo's payments to the loan. Further, any suggestion that Shellpoint covering some taxes and insurance payments constitutes "damage" to Censo is

{58742748}                                     6

1  nonsensical. Shellpoint has not requested reimbursement for these payments, nor does Censo allege
2  otherwise. Although the protection order requires Censo to keep taxes and insurance current,
3  nothing in the order forecloses Shellpoint from doing the same. The fact that Shellpoint covered tax
4  payments while transitioning out of escrow constitutes a windfall to Censo, not damages.

5          To the extent Censo alleges emotional distress as actual damages, the Ninth Circuit's
6  standards are stringent. *Snowden v. Check into Cash of Wash. Inc. (In re Snowden)*, 769 F.3d 651,
7  657 (9th Cir 2014). "Fleeting or trivial anxiety or distress does not suffice to support an award;
8  instead, an individual must suffer *significant* emotional harm." *In re Dawson*, 390 F.3d 1139, 1149
9  (9th Cir. 2004) (emphasis added); *In re Grihalva*, No. 11-26893, 2013 WL 5311227, at *6 n.17 (D.
10 Nev. Sept. 3, 2013) (debtor's attestation that the action "upset me greatly" insufficient for emotional
11 distress damages). The Ninth Circuit further requires that the requisite emotional harm is "clearly
12 established." *Snowden*, 769 F.3d at 657. A debtor may prove emotional distress by offering
13 corroborating medical evidence, or through the testimony of non-expert witnesses, "such as family
14 members, friends, or coworkers," whose description of the "manifestations of mental anguish . . .
15 clearly establish[es] that significant emotional harm occurred." *Dawson*, 390 F.3d at 1149-50. A
16 debtor seeking the award damages for emotional distress must present evidence beyond the debtor's
17 self-serving testimony. *See In re Brown*, 481 B.R. 351, 363 (Bankr. W.D. Pa. 2012); *accord Diviney*
18 *v. NationsBank of Texas* (*In re Diviney*), 211 B.R. 951, 967 (Bankr. N.D. Okla. 1997), *aff'd*, 225
19 B.R. 762 (10th Cir. BAP 1998) (no damages for emotional distress for stay violation where no
20 medical evidence was introduced to corroborate the claim).

21         Censo provides no evidence of "stress" beyond a single conclusory sentence at the end of its
22 motion. This falls woefully short of the standard for emotional stress to constitute actual damages.
23 Further, Censo fails to provide any explanation or legal authority to show that emotional distress
24 damages are even available to a business entity. They are not. *See, e.g.*, *F.D.I.C. v. Hulsey*, 22 F.3d
25 1472, 1489 (10th Cir. 1994) ("Since a corporation lacks the cognizant ability to experience emotions,
26 a corporation cannot suffer emotional distress."); *Earth Scientists (Petro Servs.) Ltd. v. U.S. Fid. &*

{58742748}                          7

*Guar. Co.*, 619 F. Supp. 1465, 1474 (D. Kan. 1985) ("A corporation cannot suffer severe emotional distress."). And even if a business entity could claim emotional damages (and it cannot), courts routinely hold such damages are not available in civil contempt proceedings. *See, e.g., Burd v. Walters (In re Walters),* 868 F.2d 665, 670 (4th Cir.1989) ("[N]o authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none"); *see also McBride v. Coleman,* 955 F.2d 571, 577 (8th Cir. 1992) ("The problems of proof, assessment, and appropriate compensation attendant to awarding damages for emotional distress are troublesome enough in the ordinary tort case, and should not be imported into civil contempt proceedings."), *cert. denied,* 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992).

Finally, any damages awarded to compensate for emotional distress require a "causal connection between th[e] significant harm and the violation . . .." *Dawson*, 390 F.3d at 1148. There is simply no evidence of any necessary "causal connection" to award emotional distress damages in this case.

## V.   CONCLUSION.

Shellpoint has fully complied with its obligations under the stipulated interim adequate protection order, and Censo fails to provide any evidence to the contrary. Further, even if Shellpoint had violated the order (and it did not), Censo has not shown that such violation was made willfully or in bad faith such that sanctions are warranted. Lastly, Censo has failed to prove any actual damages stemming from Shellpoint's alleged conduct. Censo's motion lacks merit, and the court should deny it in full.

DATED this 7th day of July, 2021.

**AKERMAN LLP**

*/s/ Nicholas E. Belay*
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
NICHOLAS E. BELAY, ESQ.
Nevada Bar No. 15175
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
*Attorneys for Shellpoint Mortgage Servicing*

{58742748}                                8

# INDEX OF EXHIBITS

**Exhibit A**     Payment Ledger